UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

LEADSINGER, INC.,                      :

                    Plaintiff,         :     05 Civ. 5606 (HBP)

     -against-                         :     OPINION
                                             AND ORDER
EDWARD J. COLE,                        :_____

                    Defendant.         :

----------------------------------X


          PITMAN, United States Magistrate Judge


I.  Introduction


          I write to resolve three motions for contempt that

plaintiff has made in this action.

          By notice of motion dated September 20, 2005 (see

Docket Items 37, 43, hereinafter "Contempt Motion I"), plaintiff

moves for (1) an Order holding defendant in civil contempt, (2)

certification of the facts to the district court for criminal

contempt proceedings, (3) $4,050,000 in compensatory damages and

(4) attorney's fees, based on defendant's alleged violation of an

ex parte temporary restraining order issued by the Supreme Court

of the State of New York, New York County (Smith, J.), on April

27, 2005 and subsequently amended on May 25, 2005.[1]

---

          [1]In Contempt Motion I, plaintiff also moves to amend the
caption as to replace the current designation for plaintiff,
"Leadsinger, Inc.," with plaintiff's correct corporate name, "ES
                                             (continued...)

By notice of motion dated November 28, 2005 (<u>see</u> Docket Items 40, 41, 42, 44,[2] hereinafter "Contempt Motion II"), plaintiff also moves for (1) an Order holding defendant in civil contempt, (2) certification of the facts to the district court for criminal contempt proceedings, and (3) attorney's fees, based on defendant's alleged violation of my September 26, 2005 Order (<u>see</u> Docket Item 26).

Finally, by notice of motion dated December 26, 2005 (<u>see</u> Docket Items 45, 46, 47, 48, 49, hereinafter "Contempt Motion III"), plaintiff moves for "judgment against defendant pursuant to the Court's inherent authority and to the extent applicable, [Fed.R.Civ.P.] 16," based on defendant's additional violations of my September 26, 2005 Order.

The parties have consented to my exercising plenary jurisdiction over this action pursuant to 28 U.S.C. § 636(c) (Docket Item 7).  The following constitutes my findings of fact and conclusions of law pursuant to Local Rule 83.9(c).

---

[1](...continued)
Electrosales Leadsinger Co. Ltd."  This aspect of Contempt Motion I is granted.

[2]Plaintiff's electronic document filings in this action have been less than a model of clarity.  As a result, some motions have been filed under multiple docket item numbers.

## II.  Findings of Fact

### A.  Background and Procedural History

Plaintiff, ES Electrosales Leadsinger Co. Ltd. ("Leadsinger"), is in the business of selling karaoke products on both a wholesale and retail basis.  On or about April 20, 2004, plaintiff entered into a contract with defendant, Edward J. Cole, pursuant to which Cole became Leadsinger's national sales manager for a one-year period (see Second Amended Complaint ("2d Am. Compl.") at ¶¶ 4-5 (Docket Item 21)).

Although the contract contained an automatic extension provision, plaintiff alleges that Cole resigned from his position several days before the contract expired (see 2d Am. Compl. ¶¶ 6-7).  Plaintiff also claims that, inter alia, Cole, both personally and through his sister, Sharon Cole, who was Cole's putative agent, violated the confidentially provision in the contract by sending e-mails "to Leadsinger's employees and/or representatives disparaging Leadsinger and unjustifiably attempting to create doubt about the quality of Leadsinger's products to thereby interfere with sales" (2d Am. Compl. ¶ 17).  Plaintiff further alleges that beginning in or about April 15, 2005, Cole and his sister began sending e-mails in which they threatened to, among other things, interfere with Leadsinger's business relationships, as well as threatening to contact the family of

Leadsinger's president, Jerry Choe, to disclose Choe's alleged personal indiscretions (see 2d Am. Compl. ¶¶ 20-22).

On April 22, 2005, plaintiff filed a verified complaint in the Supreme Court of the State of New York, New York County, seeking a preliminary injunction, temporary restraining order and money damages as against defendant based on the following claims: (1) injurious falsehood, (2) interference with contract, and (3) interference with prospective advantage. Although not set forth as a separate claim, the complaint also alleged that defendant "received advances exceeding any commissions he may have earned" (see Notice of Removal, dated June 15, 2005 (Docket Item 1)).

Also on April 22, 2005, plaintiff filed an order to show cause seeking an ex parte temporary restraining order against defendant (see Docket Item 1). On April 26, 2005, the Honorable Karen Smith, Justice, Supreme Court of the State of New York, New York County, declined to sign the application because plaintiff was "seek[ing] monetary relief for the alleged wrong committed by defendant" and, therefore, "a TRO or preliminary and permanent injunctive relief [was] not appropriate" (see Docket Item 1).

Following Justice Smith's denial, plaintiff filed a supplemental affidavit in support of its application for a temporary restraining order which stated, in pertinent part: "Plaintiff meant to inform this Court that damages were only

4

being sought for defendant's breach of contract in conjunction with one customer, HH Gregg Appliances and Electronics . . ." (Docket Item 1). Plaintiff simultaneously filed an amended verified complaint seeking damages only in connection with HH Gregg Appliances and Electronics (see Docket Item 1).

Based on these papers, Justice Smith signed the order to show cause and entered a temporary restraining order against defendant on April 27, 2005 (see Docket Item 1; see also Ex. 2 attached to Affidavit of Paul W. Siegert, Esq. in Support of Motion for Contempt of Court, sworn to on September 19, 2005 ("Siegert 9/19/05 Aff.") (Docket Item 37)).

Justice Smith's Order stated:

> ORDERED that pending the hearing of this motion, the defendant, Edward J. Cole, his servants, agents and employees are temporarily enjoined and restrained from communicating or making any other contact by mail, telephone, e-mail, voice-mail or other means with Leadsinger, Leadsinger's existing customers, potential customers of Leadsinger of which defendant is aware, sales representatives, management, or with the family of Jerry Choe and from harrassing [sic], menacing, intimidating or threatening Jerry Choe or his family, and it if further
>
> ORDERED that service of a copy of this Order and all the papers upon which it was granted including the summons and complaint shall be made upon the defendant personally on or before the 3rd day of May, 2005 and that such service shall be deemed sufficient.

(Siegert 9/19/05 Aff. Ex. 2).

Plaintiff's counsel e-mailed the order to defendant on April 27, 2005 and attempted, albeit unsuccessfully, to serve

defendant with the Order and the supporting papers, as directed, by May 3, 2005 (Siegert 9/19/05 Aff. ¶¶ 8, 18-19). Since plaintiff was unable to serve defendant by May 3, 2005, plaintiff sought and was granted an amended order to show cause and a temporary restraining order from Justice Smith on May 25, 2005. The amended order was identical to the April 27 order quoted above; however, the deadline for service upon defendant was extended to June 1, 2005 (Siegert 9/19/05 Aff. ¶ 19 and Ex. 17). Plaintiff was personally served with the amended order to show cause and the supporting papers on May 27, 2005 (Siegert 9/19/05 Aff. ¶ 19 and Ex. 18).

The case was subsequently removed from the Supreme Court of the State of New York, New York County, to this Court by Notice of Removal filed June 15, 2005 (Docket Item 1). Federal jurisdiction is based on diversity of citizenship. See 28 U.S.C. § 1332(a)(1).

Following removal, by notice of motion dated July 22, 2005 (Docket Item 9), plaintiff moved for an Order holding defendant in contempt of Justice Smith's temporary restraining order. Plaintiff argued that defendant had violated Justice Smith's order by directly communicating with Leadsinger's customers, Jerry Choe (Leadsinger's president) and other members of Leadsinger management. That motion was denied without prejudice for, inter alia, plaintiff's failure to set forth with

6

particularity the damages resulting from defendant's alleged violation of Justice Smith's order (<u>see</u> Docket Items 19, 20).

By notice of motion dated September 20, 2005, plaintiff moved for a preliminary injunction and temporary restraining order seeking to enjoin defendant from contacting Leadsinger's customers, potential customers, sales representatives, management and the family of Jerry Choe, as well as from posting a website referring to Leadsinger.[3]  I held a hearing on September 23, 2005 and, for the reasons stated on the record in open court, entered an order on September 26, 2005 that (1) denied plaintiff's application for a preliminary injunction and (2) provided the following directive to defendant:

> Pending further order of the court, defendant is directed to refrain from directly contacting plaintiff's principals and their family members; if defendant wishes to contact plaintiff, he is directed to do so through counsel.

(<u>see</u> Docket Item 26; <u>see</u> <u>also</u> Transcript of the September 23, 2005 Hearing ("9/23/05 Tr.") at 169-86).

On December 19, 2005, I held a conference to resolve a motion to withdraw by defendant's counsel and to address the briefing schedule for two pending motions for contempt.  Defendant personally participated in the conference by telephone. During the conference, I granted defendant's counsel's motion to

---

[3]That same notice of motion also contained Contempt Motion I.

withdraw and provided defendant with the following warning and direction:

> THE COURT: The second issue that I want to address today is there are two pending applications to hold you in contempt, Mr. Cole. . . . On September 26th, I issued an order directing you not to contact plaintiff, plaintiff's principles, or family members directly. And it appears that you have done so.
>
> MR. COLE: Yes, sir, I have.
>
> THE COURT: Why? Why have you violated my order? Before you go further --
>
> . . . .
>
> THE COURT: Well, tell you what, Mr. Cole. On reflection, don't say anything. I'm considering whether I should refer this matter to the United States Attorney's Office under Federal Rule of Criminal Procedure 42 for criminal prosecution. So don't say anything else.
>
> MR. COLE: Okay.
>
> . . . .
>
> THE COURT: Mr. Cole, . . . let me warn you that every instance of criminal contempt carries with it [] -- if you are found guilty . . . a potential sentence of up to thirty days imprisonment. My September order directing you not to contact plaintiff or its principles or their family members still stands.
>
> I am repeating that direction to you. You are not to contact plaintiff, plaintiff's principles, or the family members of plaintiff's principles. If you feel you need to communicate with plaintiff's principles about something, you are directed to do so through their

<pre>
                    attorney, Mr. Siegert.  Do you under-
                    stand that?

                    . . . .

     MR. COLE:      Okay, Your Honor.  I understand.

                    . . . .

     THE COURT:     Mr. Cole, you ought to retain new coun-
                    sel as soon as practicable.  You may be
                    facing a very serious situation here.
</pre>

(Transcript of the December 19, 2005 conference ("12/19/05 Tr.")

at 6-7, 9-11).

By Order dated December 19, 2005, I also provided

defendant with the following admonition:

> Mr. Cole is reminded that my September 26, 2005
> Order remains in effect.  I remind Mr. Cole that he is
> directed to refrain from directly contacting plain-
> tiff's principals and their family members; if defen-
> dant wishes to contact plaintiff, he is directed to do
> so through counsel.

(Docket Item 52).

B.  Findings of Fact With
    Respect to Contempt Motion I

As noted above, defendant was served with Justice

Smith's May 25th amended order to show cause, containing the

temporary restraining order, on May 27, 2005 (Siegert 9/19/05

Aff. ¶ 19 and Ex. 18).  Justice Smith's temporary restraining

order provided, in pertinent part:

> ORDERED that pending the hearing of this motion,
> the defendant, Edward J. Cole, his servants, agents and
> employees are temporarily enjoined and restrained from

> communicating or making any other contact by mail,
> telephone, e-mail, voice-mail or other means with
> Leadsinger, Leadsinger's existing customers, potential
> customers of Leadsinger of which defendant is aware,
> sales representatives, [and] management . . .

(Siegert 9/19/05 Aff. Ex. 17).

However, even after being served with the temporary restraining order, defendant repeatedly contacted members of Leadsinger's management, namely Jerry Choe, Leadsinger's president, director and a shareholder, K.H. Lee, Leadsinger's vice-president, director and a shareholder, and Steve Kim, Leadsinger's executive vice-president, director and a shareholder (see Reply Declaration of Paul W. Siegert, Esq., dated January 21, 2006 ("Siegert 1/21/06 Decl."), at ¶¶ 6-7; Declaration of Paul W. Siegert, Esq., dated December 26, 2006 ("Siegert 12/26/05 Decl."), at ¶ 4; Affidavit of Paul W. Siegert, Esq. in Support of Motion for Contempt of Court, sworn to on November 28, 2005 ("Siegert 11/28/05 Aff."), at ¶ 4).

Specifically, defendant sent e-mails on a nearly daily basis and sometimes many times per day to either Jerry Choe, K.H. Lee and/or Steve Kim. Defendant sent e-mails to these individuals on: May 29, 30 and 31, 2005 and June 2, 3, 4, 6, 7, 8, 9, 10, 11, 12 and 13, 2005 (see Siegert 9/19/05 Aff. ¶ 20 and Ex. 20-23, collectively).

C.  Findings of Fact With Respect to
    Contempt Motion II and Contempt Motion III

As set forth above, my September 26, 2005 Order directed defendant:

> Pending further order of the court, defendant is
> directed to refrain from directly contacting plain-
> tiff's principals and their families members; if defen-
> dant wishes to contact plaintiff, he is directed to do
> so through counsel.

(Docket Item 26).  Indeed, during the September 23, 2005 hearing,

I specifically provided defendant with the following directive:

> Mr. Cole, the defendant, [is] not to have any
> direct contact with plaintiff, with Mr. Choe or Mr.
> Choe's immediate family.
>
> That is, he should not write to them.  He should-
> n't e-mail them.  He shouldn't call them. . . .

(9/23/05 Tr. at 185).

Defendant not only concedes actual knowledge of my

Order in both letters and e-mails (see Siegert 11/28/05 Aff. ¶ 5

and, collectively, Ex. 5), he also candidly admits that he

violated my order and welcomes the possibility of incarceration

for his violations (see Siegert 11/28/05 Aff. ¶ 6 and, collec-

tively, Ex. 6).  For example, in an e-mail dated November 22,

2005 sent to, inter alia, Jerry Choe, K.H. Lee and Steve Kim,

defendant states:

> Attached is a letter I sent to Judge Pittman [sic]
> this morning admitting my personal contact with the
> Plaintiff in an effort to settle this matter since Mr.

Siegert (admittedly) continues to refuse to communicate settlement offers to his client . . . .

If Judge Pittman [sic] wishes to incarcerate me for making a good faith settlement offer to the Plaintiff, I will happily serve my time. I have lost everything, so what does 30, 60, 90 or 120 days in jail mean to me?

(Siegert 11/28/05 Aff. Ex. 6).

The record here shows that defendant sent e-mails to Jerry Choe on October 26, 2005, November 23, 24, 25, 26, 27 and 29, 2005 and December 6, 11, 12, 13, 14, 15, 16, 17, 18, and 19, 2005 (see Siegert 11/28/05 Aff. ¶ 4 and, collectively, Ex. 4; Siegert 12/26/05 Decl. at ¶ 4 and, collectively, Ex. 4). In addition, defendant also sent e-mails to K.H. Lee and Steve Kim, both of whom, as noted above, are principles of Leadsinger, on October 17, 18 and 20, 2005, November 1, 3, 5, 7, 9, 11, 14, 15, 16, 18, 21, 22, 23, 24, 25, 27, 28, 29, and 30, 2005 and December 6, 8, 9, 12, 13, 14, 16, 17 and 19, 2005 (see Siegert 11/28/05 Aff. ¶ 4 and, collectively, Ex. 3; Siegert 12/26/05 Decl. at ¶ 4 and, collectively, Exs. 3-4).

Moreover, even after I admonished defendant during the December 19, 2005 conference and reminded him in my Order of that date to refrain from contacting plaintiff's principals (see Docket Item 52; see also 12/19/05 Tr. at 6-7, 9-11), defendant continued to send e-mails to K.H. Lee and Steve Kim from December 27, 2005 through January 18, 2006 (see Siegert 1/21/06 Decl. at ¶ 7).

III.  Conclusions of Law

    A.  Magistrate Judge's Authority
        Under 28 U.S.C. § 636(e) to Rule
        <u>on Plaintiff's Motions for Contempt</u>

When the parties have consented to a magistrate judge's exercising plenary jurisdiction over an action pursuant to 28 U.S.C. § 636(c), as they have in the present action (<u>see</u> Docket Item 7), "the magistrate judge may exercise the civil contempt authority of the district court."  28 U.S.C. § 636(e)(4); <u>see</u> <u>also</u> <u>United States v. Montgomery Global Advisors V LLC</u>, 04-00733 (EDL), 2005 WL 2249092 at *1 (N.D. Cal. Aug. 1, 2005) (same); <u>British Int'l Ins. Co. Ltd. v. Seguros La Republica, S.A.</u>, 90 Civ. 2370 (JFK)(FM), 2001 WL 958975 at *1 (S.D.N.Y. Aug. 22, 2001) (explaining that "28 U.S.C. § 636(e) has recently been modified to give United States magistrate judges expanded con-tempt powers").  Accordingly, to the extent that plaintiff moves to hold defendant in civil contempt for violating the orders discussed above, I have the authority to adjudicate plaintiff's motions.

Additionally, pursuant to 28 U.S.C. § 636(e)(3), I have the following criminal contempt authority:

> In any case in which a United States magistrate judge presides with the consent of the parties under subsection (c) of this section, . . . the magistrate judge shall have the power to punish, by fine or im-prisonment, or both, criminal contempt constituting

> disobedience or resistance to the magistrate judge's
> lawful writ, process, order, rule, decree, or command.
> Disposition of such contempt shall be conducted upon
> notice and hearing under the Federal Rules of Criminal
> Procedure.

See also Roell v. Withrow, 538 U.S. 580, 593 (2003) (noting that "[28 U.S.C. § 636(e)(3)] grants magistrate judges the power to hold parties before them in contempt, but conditions the imposition of contempt sanctions 'upon notice and hearing under the Federal Rules of Criminal Procedure'").  Therefore, to the extent that plaintiff moves for an order holding defendant in criminal contempt for allegedly violating my September 26, 2005 Order, although I have the authority to adjudicate that aspect of the motion,[4] I may only do so after providing the defendant with the constitutional safeguards of notice and a hearing in accordance with Rule 42(a) of the Federal Rules of Criminal Procedure.[5]  I shall address in Section III.E.2. below, whether a Fed.R.Crim.P 42(a) notice and referral of this matter to the United States Attorney's Office for the Southern District of New York is warranted based on the record.

I do not, however, have the authority to act on plaintiff's application to hold defendant in criminal contempt for

---

[4]28 U.S.C. § 636(e)(5) sets forth the restrictions placed on the sentence a magistrate judge may impose for criminal contempt.

[5]Fed.R.Crim.P 42(a) states: "Disposition After Notice.  Any person who commits criminal contempt may be punished for that contempt after prosecution on notice."

allegedly violating the state court's temporary restraining order. Since I did not issue the order in question, a putative violation of the state court's temporary restraining order does not fall within the scope of 28 U.S.C. § 636(e)(3). Rather, in accordance with 28 U.S.C. § 636(e)(6):

> [T]he magistrate judge shall forthwith certify the facts to a district judge and may serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified. The district judge shall thereupon hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment, punish such person in the same manner and to the same extent as for a contempt committed before a district judge.

See also JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc., 03 Civ. 5562 (JGK)(AJP), 2006 WL 1148110 at *1 (S.D.N.Y. Apr. 28, 2006) (discussing the certification procedure under 28 U.S.C. § 636(e)(6)); Jones v. J.C. Penney's Dep't Stores, Inc., 228 F.R.D. 190, 198 (W.D.N.Y. 2005) (same). Accordingly, I shall also address in Section III.D.6. below, whether certification of the facts to the district court is necessary under these facts.

B.  Due Process Requirements
    for Civil Contempt Proceedings

"Due process requires that before being held in contempt, a party must have notice that it is a defendant in a

contempt hearing." Drywall Tapers & Pointers of New York v. Local 530, 889 F.2d 389, 394 (2d Cir. 1989), citing Dole Fresh Fruit Co. v. United Banana Co., 821 F.2d 106, 109-10 (2d Cir. 1987); Bank of Credit & Commerce Int'l (Overseas) Ltd. v. Tamraz, 97 Civ. 4759 (SHS), 2006 WL 1643202 at *3 (S.D.N.Y. June 13, 2006) (same). Accord Z-Int'l, Inc. v. Z Line Int'l, Inc., 02 Civ. 8646 (HB), 2005 WL 1580609 at *4 (S.D.N.Y. July 6, 2005) ("Before imposing sanctions on a person charged with civil contempt, due process requires that the person receive notice and an opportunity to be heard."); Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc., 00 Civ. 7352 (GEL), 2004 WL 1418201 at *2 (S.D.N.Y. June 23, 2004) (same), citing Shoenberg v. Shapolsky Publishers, Inc., 971 F.2d 926, 934-35 (2d Cir. 1992), overruled in part on other grounds by, Bassett v. Mashantucket Pequot Tribe, 204 F.3d 343 (2d Cir. 2000).

Here, in accordance with Local Rule 83.9(a), both an order to show cause (Contempt Motion I, see Docket Item 37) and notices of motion (Contempt Motion II, see Docket Items 40, 41, 42; Contempt Motion III, see Docket Items 45, 46, 47, 48) were either served upon defendant's prior counsel, Carter Ledyard & Millburn LLP, and/or defendant personally. Furthermore, defendant participated in the December 19, 2005 conference by telephone and was expressly apprised during that conference of the pendency of the first two motions for contempt (see 12/19/05 Tr.

at 6-7), as well as being afforded an opportunity to respond to the motions by no later than January 6, 2006 (see 12/19/05 Tr. at 7-8, 15).  See Drywall Tapers & Pointers of New York v. Local 530, supra, 889 F.2d at 396 (explaining that Due Process was satisfied when defendant had either actual notice of the contempt proceeding or formal notice through service of the contempt motions upon defendant's attorney).

Defendant's prior counsel responded to Contempt Motion I before being granted leave to withdraw as counsel (see Memorandum of Law in Opposition to Plaintiff's Motion for Contempt against Edward J. Cole, dated November 23, 2005, Docket Item 39, ("Def.'s Contempt Motion I Opp."); see also 12/19/05 Tr. at 7-8). Defendant, now pro se, responded to both Contempt Motion II and Contempt Motion III on January 17, 2006 -- albeit more than one week later than I had directed (see Letter from Edward J. Cole to my chambers, dated January 17, 2006 ("Cole's 1/17 Letter")). Moreover, defendant has not demanded an evidentiary hearing on these motions nor does it appear that there are any material issues of fact in dispute that would necessitate a hearing.  See ACLI Government Securities, Inc. v. Rhoades, 989 F. Supp. 462, 466 n.5 (S.D.N.Y. 1997), aff'd, 159 F.3d 1345 (2d Cir. 1998) ("Local Rule 83.9(b) only requires oral evidence to be taken when factual disputes exist as to the alleged contemnor's conduct.").

C.  The Standards Applicable
    to a Motion for Civil Contempt

As the late Honorable Constance Baker Motley, United
States District Judge, explained in D'Orange v. Feely, 959 F.
Supp. 631, 634-35, 637 (S.D.N.Y. 1997):

> It is a firmly established principal that federal
> courts possess the inherent power to punish for con-
> tempt.  See, Chambers v. NASCO, Inc., 501 U.S. 32, 43,
> 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27, (1991) ("Courts
> of justice are universally acknowledged to be vested,
> by their very creation, with power to impose silence,
> respect, and decorum, in their presence, and submission
> to their lawful mandates.") (quotation omitted); Young
> v. United States ex rel. Vuitton et Fils, S.A., 481
> U.S. 787, 795, 107 S.Ct. 2124, 2131, 95 L.Ed.2d 740
> (1987); Abrams v. Terry, 45 F.3d 17 (2d Cir. 1995).
> These powers reach conduct before the court and beyond
> the court's confines, Young, 481 U.S. at 798, 107 S.Ct.
> at 2132-33, and are "governed not by rule or statute
> but by the control necessarily vested in courts to
> manage their own affairs so as to achieve the orderly
> and expeditious disposition of cases."  Chambers, 501
> U.S. at 43, 111 S.Ct. at 2132 (quoting Link v. Wabash
> R.R. Co., 370 U.S. 626, 630-31, 82 S.Ct. 1386, 1388-89,
> 8 L.Ed.2d 734 (1962)).

Accord Israel v. Carpenter, 95 Civ. 2703 (JCF), 2003 WL 21518830
at *2 (S.D.N.Y. July 7, 2003); Merriweather v. Sherwood, 250 F.
Supp.2d 391, 393 (S.D.N.Y. 2003); United States v. D-M Sales
Corp., 903 F. Supp. 431, 433 (E.D.N.Y. 1995); Janmort Leasing,
Inc. v. Econo-Car Int'l, Inc., 475 F. Supp. 1282, 1297 n.12
(E.D.N.Y. 1979), citing Shillitani v. United States, 384 U.S.
364, 370 (1966).

The standards applicable to a motion for civil contempt are well settled and require only brief review. As the Court of Appeals for the Second Circuit explained in <u>Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Tech., Inc.</u>, 369 F.3d 645, 655 (2d Cir. 2004):

> A party may be held in civil contempt for failure to comply with a court order if "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." <u>King v. Allied Vision, Ltd.</u>, 65 F.3d 1051, 1058 (2d Cir. 1995). It need not be established that the violation was willful. <u>Donovan v. Sovereign Sec. Ltd.</u>, 726 F.2d 55, 59 (2d Cir.1984).

<u>See also</u> <u>Perez v. Danbury Hosp.</u>, 347 F.3d 419, 423-24 (2d Cir. 2003); <u>Equal Employment Opportunity Comm'n v. Local 638</u>, 81 F.3d 1162, 1171 (2d Cir. 1996); <u>Huber v. Marine Midland Bank</u>, 51 F.3d 5, 10 (2d Cir. 1995); <u>New York State Nat'l Org. for Women v. Terry</u>, 886 F.2d 1339, 1351 (2d Cir. 1989).

As to the first prong, "[a] 'clear and unambiguous' order is one that is 'specific and definite enough to apprise those within its scope of the conduct that is being proscribed.'" <u>Medallic Art Co., Ltd. v. Novus Mktg., Inc.</u>, 99 Civ. 502, 2003 WL 22053130 at *1 (S.D.N.Y. Sept. 2, 2003), <u>quoting</u> <u>New York State Nat'l Org. for Women v. Terry</u>, <u>supra</u>, 886 F.2d at 1352; <u>see also</u> <u>Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corp.</u>, 04 Civ. 7369 (LTS), 2006 WL 2128785 at *3 (S.D.N.Y. July 28, 2006) ("Any ambiguities in an order should be read in favor of the person

charged with contempt."). <u>Accord</u> <u>JSC Foreign Econ. Ass'n</u>
<u>Technostroyexport v. Int'l Dev. & Trade Servs., Inc.</u>, 03 Civ.
5562 (JGK)(AJP), 2006 WL 1206372 at *2 (S.D.N.Y. May 1, 2006);
<u>Mingoia v. Crescent Wall Sys.</u>, 03 Civ. 7143 (THK), 2005 WL 991773
at *1 (S.D.N.Y. Apr. 26, 2005); <u>Independent Living Aids, Inc. v.</u>
<u>Maxi-Aids, Inc.</u>, <u>supra</u>, 349 F. Supp.2d at 515; <u>Panix Promotions,</u>
<u>Ltd. v. Lewis</u>, 01 Civ. 2709 (HB), 2004 WL 421937 at *2 (S.D.N.Y.
Mar. 5, 2004); <u>A.V. By Versace, Inc. v. Gianni Versace, S.p.A.</u>,
87 F. Supp.2d 281, 290-91 (S.D.N.Y. 2000); <u>Bear U.S.A., Inc. v.</u>
<u>Kim</u>, 71 F. Supp.2d 237, 246 (S.D.N.Y. 1999), <u>aff'd</u>, 216 F.3d 1071
(2d Cir. 2000).

     As explained by the Court of Appeals for the Second
Circuit in <u>King v. Allied Vision, Ltd.</u>, 65 F.3d 1051, 1058 (2d
Cir. 1995):

> A clear and unambiguous order is one that leaves "no
> uncertainty in the minds of those to whom it is ad-
> dressed," <u>Hess v. New Jersey Transit Rail Operations,</u>
> <u>Inc.</u>, 846 F.2d 114, 116 (2d Cir. 1988), who "must be
> able to ascertain from the four corners of the order
> precisely what acts are forbidden," <u>see</u> <u>Drywall Tapers,</u>
> <u>Local 1974 v. Local 530, Operative Plasterers Int'l</u>
> <u>Ass'n</u>, 889 F.2d 389, 395 (2d Cir. 1989) . . . .

<u>Accord</u> <u>Equal Employment Opportunity Comm'n v. N.Y. Times Co.</u>,
196 F.3d 72, 81 (2d Cir. 1999); <u>United States v. District Council</u>
<u>of New York City</u>, 409 F. Supp.2d 439, 450 (S.D.N.Y. 2006); <u>U2</u>
<u>Home Entm't, Inc. v. Hong Wei Int'l Trading, Inc.</u>, 02 Civ. 5828
(JFK), 2005 WL 3766976 at *6 (S.D.N.Y. May 3, 2005); <u>Independent</u>
<u>Living Aids, Inc. v. Maxi-Aids, Inc.</u>, <u>supra</u>, 349 F. Supp.2d at

515; <u>Medallic Art Co., Ltd. v. Novus Mktg., Inc.</u>, <u>supra</u>, 2003 WL 22053130 at *1; <u>A.V. by Versace, Inc. v. Gianni Versace S.p.A.</u>, <u>supra</u>, 87 F. Supp.2d at 290; <u>Playboy Enter., Inc. v. Chuckleberry Pub., Inc.</u>, 939 F. Supp. 1032, 1036 (S.D.N.Y. 1996).

With respect to the second prong, "[i]n the context of civil contempt, the clear and convincing standard requires a quantum of proof adequate to demonstrate a 'reasonable certainty' that a violation occurred." <u>Levin v. Tiber Holding Corp.</u>, 277 F.3d 243, 250 (2d Cir. 2002); <u>see also</u> <u>Ceslik v. Miller Ford, Inc.</u>, 04 CV 2045 (AWT), 2006 WL 1582215 at *1 (D. Conn. June 5, 2006); <u>Independent Living Aids, Inc. v. Maxi-Aids, Inc.</u>, <u>supra</u>, 349 F. Supp.2d at 515; <u>Matrix Essentials v. Quality King Distribs., Inc.</u>, 346 F. Supp.2d 384, 391 (E.D.N.Y. 2004); <u>Panix Promotions, Ltd. v. Lewis</u>, <u>supra</u>, 2004 WL 421937 at *2.

Turning to the third and final prong, there can be no finding of contempt if it has been shown that the alleged contemnor has been "reasonably diligent and energetic in attempting to accomplish what was ordered." <u>Equal Employment Opportunity Comm'n v. Local 638</u>, 753 F.2d 1172, 1178 (2d Cir. 1985), <u>aff'd</u>, 478 U.S. 421 (1986); <u>see also</u> <u>Powell v. Ward</u>, 643 F.2d 924, 931 (2d Cir. 1981) (same); <u>Aspira of N.Y., Inc. v. Bd. of Educ.</u>, 423 F. Supp. 647, 654 (S.D.N.Y. 1976) ("It is a sufficient defense . . . if a defendant . . . has in good faith employed the utmost diligence in discharging his responsibilities.").

D. Contempt Motion I

    As noted above, in Contempt Motion I plaintiff moves
for (1) an Order holding defendant in civil contempt, (2) certif-
ication of the facts to the district court for criminal contempt
proceedings, (3) $4,050,000 in damages, and (4) attorney's fees,
based on defendant's alleged violation of Justice Smith's tempo-
rary restraining order (see Docket Items 37, 43).[6]

    Defendant argues that Contempt Motion I should be
denied based on the following theories:[7]  (1) plaintiff has
failed to adequately support its claim that it suffered
$4,050,000 damages from defendant's alleged violation of the
state court temporary restraining order (Def.'s Contempt Motion I
Opp. at 1, 2-3); (2) the state court temporary restraining order
is too vague and over broad to be enforced (Def.'s Contempt
Motion I Opp. at 1, 3-4); (3) defendant was not served with

---

[6]Plaintiff filed the same memorandum of law with this motion
(Docket Item 43) that it submitted with a prior contempt motion
that was denied on August 24, 2005 (Docket Item 20).  Plaintiff
has also submitted, but not filed, a memorandum of law dated
September 20, 2005.  Since it appears that defendant has
responded to all of plaintiff's arguments (see Letter from
Kenneth S. Levin, Esq. to my chambers, dated December 12, 2005),
I shall address all of those arguments, notwithstanding
plaintiff's failure to file its September 20, 2005 memorandum of
law.

[7]As noted above, defendant's prior counsel, Carter Ledyard &
Millburn LLP, responded to Contempt Motion I only (see Def.'s
Contempt Motion I Opp. at 1).

process or the state court temporary restraining order during the critical period in question (Def.'s Contempt Motion I Opp. at 1, 4-6); (4) plaintiff's attorney urged defendant to undertake the very acts plaintiff now claims constitutes contempt (Def.'s Contempt Motion I Opp. at 1, 6-10); and (5) "[p]laintiff secured the underlying ex parte restraining order through an affirmative misrepresentation to the state court and for the purpose of concealing a fraud, making enforcement of the restraining order against the interests of justice and public policy" (Def.'s Contempt Motion I Opp. at 1, 11-14).

I shall first address the effective date of the state court's temporary restraining order, and then address whether defendant violated that order and, if so, what sanctions are chargeable.

### 1. Effective Dates of the State Court's Temporary Restraining Order

It is well settled that when a case has "been removed to this Court from the state court, federal [procedural] law is applied as though the action was originally commenced here." Rabbi Jacob Joseph School v. Province of Mendoza, 342 F. Supp.2d 124, 127 (E.D.N.Y. 2004), citing 14C Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3738 at 390-91 ("The case will proceed as if it had been brought in the federal court originally."). However, state law applies to

issues pertaining to the service of process prior to removal. See Fed. Ins. Co. v. Tyco Int'l Ltd., 422 F. Supp.2d 357, 384 (S.D.N.Y. 2006) ("'The sufficiency of service of process prior to removal is determined under the law of the state from whence the case was removed.'"), quoting White v. Bombardier Corp., 313 F. Supp.2d 1295, 1300 (N.D. Fla. 2004); see also Weiss v. Glemp, 792 F.Supp. 215, 224 (S.D.N.Y. 1992) ("In determining the validity of service prior to removal, a federal court must apply the law of the state in which the service was made."), citing Bomze v. Nardis Sportswear, Inc., 165 F.2d 33, 35 (2d Cir. 1948); 14C Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3738 at 398-400 (in the context of cases removed to federal court "state law governs the substantive personal jurisdiction question and the sufficiency of the state court process.").

Plaintiff concedes, as it must, see Granny Goose Foods, Inc. v. Brotherhood Of Teamsters, 415 U.S. 423, 439-40 (1974), that the state court's temporary restraining order expired ten calendar days after the action was removed to federal court on June 15, 2005 (see Siegert 9/19/05 Aff. ¶ 20; see also Affidavit of Jerry J. Choe, sworn to on September 19, 2005 ("Choe Aff."), at ¶ 3). Therefore, the state court's temporary restraining order expired on June 25, 2005.

The parties, however, are sharply divided on the date that defendant was first bound by the state court's temporary restraining order. Plaintiff argues that defendant was bound by Justice Smith's April 27, 2005 order on the day that defendant first had knowledge of it, irrespective of whether the order had been served upon defendant by that date (Siegert 9/19/05 Aff. ¶ 18). Defendant argues that New York's courts did not have personal jurisdiction over him until he was served with process on May 27, 2005 and that he was not bound by the temporary restraining order until that date (see Def.'s Contempt Motion I Opp. at 4-6). The weight of authority supports defendant's argument.

Section 6313(b) of the New York Civil Practice Law and Rules provides for personal service of temporary restraining orders:

> Unless the court orders otherwise, a temporary restraining order together with the papers upon which it was based, and a notice of hearing for the preliminary injunction, shall be personally served in the same manner as a summons.

As explained by the Supreme Court of the State of New York, Appellate Division, First Department, in <u>Abrams v. Lurie</u>, 176 A.D.2d 474, 476, 574 N.Y.S.2d 553, 555 (1st Dep't 1991):

> [A] temporary restraining order . . . must be served in the same manner as a summons (CPLR §[] [] 6313(b)). In the case of a temporary restraining order, the court is expressly empowered to order service otherwise, but it is generally recognized that this power is exercised

25

only when a temporary restraining order is issued in
the context of an already pending action.

See also Joseph M. McLaughlin, Practice Commentaries to N.Y.
C.P.L.R. § 6313, C6313:2, at 379 (McKinney 1993) ("Since a
temporary restraining order may be granted ex parte prior to the
commencement of an action, it must be 'personally served in the
same manner as a summons.' . . . The court is expressly empow-
ered to order non-personal service, which power will generally be
exercised only in cases where the temporary retraining order is
signed in an already pending action. "); David D. Siegel, New
York Practice § 481 at 810 (4th ed. 2005) ("An order to show
cause containing a temporary restraining order must be served as
the order itself dictates. . . . [W]here there is a specific
direction about service, it should be followed to the letter.").

Here, Justice Smith's first order to show cause, which
contained the temporary restraining order, was issued on April
27, 2005 ex parte and stated that: "[S]ervice of a copy of the
Order and all the papers upon which it was granted including the
summons and complaint shall be made upon defendant personally on
or before the 3rd day of May, 2005 . . ." (Siegert 9/19/05 Aff. ¶
18 and Ex. 2).

Under New York law, "[t]he method of service provided
for in an order to show cause is jurisdictional in nature and
must be strictly complied with." Stern v. Garfinkle, 22 A.D.3d
694, 694, 805 N.Y.S.2d 395, 395 (2d Dep't 2005); accord Hennessey

v. DiCarlo, 21 A.D.3d 505, 505, 800 N.Y.S.2d 576, 576 (2d Dep't), lv. denied 5 N.Y.3d 706, 835 N.E.2d 659, 801 N.Y.S.2d 799 (2005); Scharmann's Inc. v. 388 West Broadway, LLC, 258 A.D.2d 262, 262, 685 N.Y.S.2d 33, 34 (1st Dep't 1999); Zambelli v. Dillon, 242 A.D.2d 353, 353, 661 N.Y.S.2d 268, 269 (2d Dep't 1997); McGreevy v. Simon, 220 A.D.2d 713, 713, 633 N.Y.S.2d 177, 178 (2d Dep't 1995).

As a result, the failure to serve an order to show cause in the manner directed is fatal to the enforcement of that order. See, e.g., Sorli v. Coveney, 51 N.Y.2d 713, 714, 410 N.E.2d 1228, 1228, 431 N.Y.S.2d 1001, 1001 (1980) ("Inasmuch as petitioner failed to follow the provisions for service specified in the order to show cause, the petition must be dismissed."); People ex rel. Planter v. McCoy, 1 A.D.3d 1012, 1012-13, 767 N.Y.S.2d 357 (4th Dep't 2003), lv. denied 1 N.Y.3d 508, 808 N.E.2d 860, 776 N.Y.S.2d 540 (2004) ("Petitioner's failure to serve those documents as directed in the order to show cause, however, deprived the court of personal jurisdiction over the parties, and this fatal jurisdictional defect requires dismissal of the proceeding."); Kapsis v. Green, 285 A.D.2d 492, 492, 727 N.Y.S.2d 895, 895 (2d Dep't 2001) (denying enforcement of a temporary restraining order, contained in an order to show cause, because respondent was not personally served with the order to show cause or its supporting papers and, therefore, jurisdiction

over the respondent had not been obtained); <u>Turkish v. Turkish</u>, 126 A.D.2d 436, 439, 510 N.Y.S.2d 582, 585 (1st Dep't 1987) ("Since plaintiff did not strictly comply with the provisions for service set forth in the initial Order to Show Cause, there was no jurisdiction over defendant, and [plaintiff's] [contempt] proceeding should have been dismissed."); <u>Caralyus v. Hayduk</u>, 72 A.D.2d 590, 591, 421 N.Y.S.2d 79, 80 (2d Dep't 1979) ("Since the mode of service provided for in the order to show cause was jurisdictional in nature and must be strictly complied with, jurisdiction over [respondent] was never acquired."); <u>State v. Manginelli</u>, 64 A.D.2d 661, 663, 407 N.Y.S.2d 969, 971 (2d Dep't 1978) (noting that in the context of a contempt proceeding a court should not "[take] into consideration the conduct of the appellant before the order to show cause was served"); <u>In re Lakeland Federation of Teachers</u>, 65 Misc.2d 397, 400-01, 317 N.Y.S.2d 902, 907 (Sup. Ct. Westchester County 1971) ("There was no violation by any of the defendants until after the order to show cause with a temporary restraining order dated September 8, 1970, was served on the defendant union and the individual defendants."); <u>Ramos-Lopez v. Heffernan</u>, 64 N.Y.S.2d 603, 605 (Sup. Ct. Bronx County 1946) ("[F]ailure to serve the order to show cause within the time permitted by law was fatal.").

Although plaintiff's counsel apparently forwarded a copy of Justice Smith's first order to show cause to defendant by

e-mail on April 27, 2005 and defendant acknowledged receipt of the order by return e-mail of even date (Siegert 9/19/05 Aff. ¶¶ 8-10 and Exs. 3, 6), plaintiff was, admittedly, unable to serve the defendant with the order by May 3, 2005 (Siegert 9/19/05 Aff. ¶¶ 18-19). As a result, plaintiff sought and was granted an amended order from Justice Smith on May 25, 2005, which extended the deadline to effect service upon defendant until June 1, 2005 (Siegert 9/19/05 Aff. ¶ 19 and Ex. 17). Plaintiff was personally served with the amended order to show cause, which contained the temporary restraining order, along with the summons and amended complaint, on May 27, 2005 (Siegert 9/19/05 Aff. ¶ 19 and Ex. 18).

Based on the foregoing authority, New York's courts did not have personal jurisdiction over the defendant until defendant was served on May 27, 2005 and plaintiff could not, therefore, have enforced the temporary restraining order against defendant until that date. Indeed, plaintiff concedes that when it first attempted to enforce the temporary restraining order before Justice Smith on May 5, 2005 "questions arose as to whether Cole had been timely served with the Court's Order of April 27" ((Siegert 9/19/05 Aff. ¶ 18 and Ex. 16). If New York's courts did not have personal jurisdiction over defendant until May 27, 2005 and, thus, could not have held Cole in contempt for putative violations of the temporary restraining order prior to that date,

a federal district court, to which the action was subsequently
removed, is subject to the same limitation.[8]  As the Supreme
Court explained in Granny Goose Foods, Inc. v. Brotherhood Of
Teamsters, supra, 415 U.S. at 436:

> [W]hile Congress clearly intended to preserve the
> effectiveness of state court orders after removal,

---

[8]Plaintiff argues that "a person having knowledge of the
Court's Temporary Restraining Order is bound by that Order
irrespective of whether the Order in actually served upon him"
(Siegert 9/19/05 Aff. ¶ 18).  Plaintiff cites the following cases
in support of its argument:  McCain v. Dinkins, 84 N.Y.2d 216,
223, 639 N.E.2d 1132, 1138, 616 N.Y.S.2d 335, 341 (1994);
McCormick v. Axelrod, 59 N.Y.2d 574, 583, 453 N.E.2d 508, 513,
466 N.Y.S.2d 279, 283 (1983); Daly v. Amberg, 126 N.Y. 490, 496,
27 N.E. 1038, 1039-40 (1891).

However, these cases are distinguishable from the present
action.  In both McCain and McCormick, the orders at issue were
entered in actions where personal jurisdiction had already been
established.  In Daly, the individuals who were held in contempt
were the defendant's agents and all of them had been served with
the order in question, although the defendant had not.  Here, the
temporary restraining order at issue was contained within the
order to show cause and, as discussed above, personal
jurisdiction over the defendant was dependant upon plaintiff's
serving the order to show cause, as well as the summons and
amended complaint.  In an analogous case, involving the improper
service of a June 16, 1987 order to show cause, containing a
temporary restraining order and a summons and complaint, the
Appellate Division, Second Department, explained:

> The plaintiff's contention that the defendant was
> bound to honor the injunction notwithstanding the
> improper service because it was aware of its content is
> untenable.  Equally unavailing is the plaintiff's
> argument that the subsequent service of the summons and
> complaint . . . on June 24, 1987, conferred
> jurisdiction retroactive to June 16, 1987.

Norlee Wholesale Corp., Inc. v. 4111 Hempstead Turnpike Corp.,
138 A.D.2d 466, 468, 525 N.Y.S.2d 873, 876 (2d Dep't 1988)
(internal citations omitted).

there is no basis for believing that [28 U.S.C.] § 1450
was designed to give injunctions or other orders
greater effect after removal to federal court than they
would have had if the case had remained in state court.

Accordingly, I find that defendant was first bound by
the state court's temporary restraining order on May 27, 2005.
As a result, the relevant period for reviewing defendant's
conduct under Contempt Motion I is from May 27, 2005 until June
25, 2005.

2.  The Relevant Portions
    of the Temporary Restraining
    Order Were Clear and Unambiguous

Defendant agues that Justice Smith's temporary re-
straining order "was so vague and overly broad" that it did not
provide defendant with "meaningful notice of the acts he should
have been prohibited from doing" (Def.'s Contempt Motion I Opp.
at 3-4).

Specifically, defendant argues that the use of broad
language, such as "potential customers of Leadsinger" and "sales
representatives," would prohibit defendant from engaging in
common acts like shopping at many large retail stores, as well as
prohibiting defendant from contacting sales representatives about
matters unrelated to Leadsinger.  As such, defendant contends

that the order cannot serve as a basis for a criminal contempt motion (see Def.'s Contempt Motion I Opp. at 4).[9]

During the relevant period -- from May 27, 2005 to June 25, 2005 -- plaintiff relies only on defendant's e-mails to members of Leadsinger's management to establish violations of Justice Smith's Order; plaintiff is not relying any alleged contacts with "potential customers" or "sales representatives" (see Siegert 9/19/05 Aff. ¶ 20 and Exs. 20-23).  Therefore, even assuming that the terms "potential customers of Leadsinger" and "sales representatives" are vague, the portion of the order that defendant is accused of violating, i.e., contacting members of Leadsinger's management by e-mail, is clear and unambiguous. Justice Smith's order proscribed the following conduct:

> ORDERED that pending the hearing of this motion, the defendant, Edward J. Cole, his servants, agents and employees are temporarily enjoined and restrained from communicating or making any other contact by mail, telephone, e-mail, voice-mail or other means with Leadsinger, Leadsinger's existing customers, potential customers of Leadsinger of which defendant is aware, sales representatives, [and] management . . .

---

[9]The only authority that defendant cites in support of its argument is Rodgers v. Dunkirk Ice Cream Co., 86 Civ. 5612 (JFK). 1989 WL 82451 at *2 (S.D.N.Y. July 17, 1989), which involved the interpretation of the term "revised jingle" that was used in a negotiated settlement agreement.  However, unlike the restraining order at issue here, the Court in Rodgers found that there was no "'meeting of minds' between the parties as to whether the second or third jingle was the 'revised' tape referred to in the settlement agreement" and, therefore, the Court rescinded the settlement agreement rather than hold defendant in contempt.  Id. at *3.

Based on the order's express terms, plaintiff was clearly on notice that contacting Jerry Choe or other members of Leadsinger management by e-mail would constitute a violation of the temporary restraining order. No colorable argument can be made that the above-quoted portion of the order was not "'specific and definite enough to apprise those within its scope of the conduct that [was] being proscribed,'" see Medallic Art Co., Ltd. v. Novus Mktg., Inc., supra, 2003 WL 22053130 at *1, or that defendant could not "ascertain from the four corners of the order precisely what acts [were] forbidden," see Drywall Tapers, Local 1974 v. Local 530, Operative Plasterers Int'l Ass'n, supra, 889 F.2d at 395.

Accordingly, defendant's argument that the temporary restraining order is too vague to be enforced in unavailing.

3.  Defendant Was Not Induced By Plaintiff
    or Its Counsel to Engage in Prohibited
    Conduct During the Relevant Time Period

Next, defendant argues that he cannot be held in contempt because plaintiff's counsel and Jerry Choe, through an intermediary, advised him that he should engage in the precise conduct plaintiff now claims to be a violation of the temporary restraining order (Def.'s Contempt Motion I Opp. at 6-10). Specifically, defendant points to a May 7, 2005 e-mail he received from Paul Seigert, plaintiff's counsel, in which Mr.

33

Siegert stated, in pertinent part: "In my opinion, you should (1) unconditionally repent [and] (2) secure two or three accounts for Leadsinger without condition . . ." (see Affidavit of Edward J. Cole, executed July 28, 2005 ("Cole Aff."), at ¶ 37 and Ex. 11 attached thereto). Defendant also claims that from late April through early May 2005, an individual by the name of Chuck Stewart functioned as an intermediary for Jerry Choe. Defendant alleges that Stewart relayed messages from Choe to him during this period, advising defendant that Choe wanted him to secure new business for Leadsinger (see Cole Aff. ¶¶ 33-34). Defendant's argument is unpersuasive for several reasons.

First, as discussed in the prior section, Contempt Motion I relies only on defendant's e-mails to members of Leadsinger's management to establish violations of Justice Smith's Order during the relevant period (see Siegert 9/19/05 Aff. ¶ 20 and Exs. 20-23). Thus, the communications from Messrs. Siegert and Chou could not have induced the conduct that underlies Contempt Motion I.

Second, the May 7, 2005 e-mail from Siegert and the discussions with Stewart in or about late April until early May 2005, all predated service on defendant of Justice Smith's amended order to show cause and the temporary restraining order on May 27, 2005. As a result, even assuming for purposes of argument that the above conduct by Siegert and Stewart offers

some justification for Cole's conduct in or about late April and early May, the record shows that neither plaintiff nor its counsel offered conflicting advice to defendant after service of the temporary restraining order. Indeed, on the day that defendant was served with the restraining order he expressly advised his sister, Sharon Cole, and others:

> Do not contact any persons related to LEADSINGER and do not reply to emails that you may receive from anybody even remotely related to LEADSINGER, and whatever you do, have no contact with [Siegert]. The clock officially started running on the restraining order today.
>
> . . . .
>
> I have copied [Siegert] on this email. From this day forward, you will only hurt yourself if you violate the restraining order . . . .

(E-mail from Edward Cole to Sharon Cole and others, dated May 27, 2005 and annexed as Ex. 19 to the Siegert 9/19/05 Aff.). Nevertheless, failing to heed his own advise, defendant engaged in conduct that was clearly and unequivocally prohibited by the temporary restraining order by e-mailing Jerry Choe and other members of Leadsinger's management, including K.H. Lee and Steve Kim, on a nearly daily basis and sometimes many times per day from May 29, 2005 through and including June 13, 2005 (see Siegert 9/19/05 Aff. ¶ 20 and Ex. 20-23, collectively).

To the extent that defendant argues that his actions should be excused because he was acting in good faith based on a combination of conflicting advice from Siegert and, indirectly,

from Choe, the Court of Appeals for the Second Circuit has explained that "[t]he fact that the prohibited act was done inadvertently or in good faith, however, does not preclude a citation for civil contempt, for the sanction is remedial in nature." Vuitton et Fils S. A. v. Carousel Handbags, supra, 592 F.2d at 129; see also Independent Living Aids, Inc. v. Maxi-Aids, Inc., supra, 349 F. Supp.2d at 517 (same); Gasser v. Infanti Int'l, Inc., 03 CV 6413 (ILG), 2004 WL 906487 at *6 (E.D.N.Y. Mar. 24, 2004) (collecting cases holding that "acting in good faith [will] not preclude a finding of civil contempt"). Accord United States v. Weslin, 204 F. Supp.2d 547, 554 (W.D.N.Y. 2001), aff'd, 34 Fed.Appx. 815 (2d Cir. 2002) ("Good faith reliance on advice of counsel is not a defense to a charge of criminal contempt, though it may be considered as a mitigating factor in the punishment to be imposed in the event of conviction."), citing United States v. Remini, 967 F.2d 754, 757-58 (2d Cir. 1992); Howe Laboratories, Inc. v. Stevick, 94 CV 5013 (SJ), 1996 WL 652608 at *6 (E.D.N.Y. Nov. 6, 1996) ("[A] good faith reliance on legal advice does not excuse a party for contempt."); S.E.C. v. Musella, 818 F. Supp. 600, 606 (S.D.N.Y. 1993) (collecting cases holding that "[t]he party seeking a finding of contempt need not show that violation of the order was willful, and good faith is not a defense. Nor may the alleged contemnor rely on

his own inadvertence, misunderstanding or advice from coun-
sel.").[10]

Thus, defendant's argument is without merit and does
not constitute a defense to plaintiff's contempt motion.

### 4. Even a Putatively Invalid Court Order Must be Obeyed

Defendant also argues that he should not be held in
contempt because "plaintiff sought the underlying restraining
order for improper reasons:  to cover up fraud" and plaintiff
"misrepresented its legal position before the state court in
order to secure the ex parte restraining order" (Def.'s Contempt
Motion I Opp. at 11-14).

Again, defendant cites not authority in support of its
arguments.  Even if I were to assume for purposes of argument the
truth of defendant's allegations, "[i]t is axiomatic that a court

_____

[10]Defendant cites no authority which directly supports his
argument that a suggestion by an adversary that a litigant engage
in proscribed conduct constitutes a defense to a contempt motion.

The only authority that defendant cites is Arons v. Lalime,
6:94-CV-7618 (CJ)(SH), 1998 WL 912034 at *1 (W.D.N.Y. Oct. 8,
1998), which involved an attorney's violation of New York
Disciplinary Rule 7-104(a)(2) by providing legal advice to an
unrepresented party whose interests were in conflict with those
of the attorney's client.  Id. at *6.  Although Siegert's conduct
is troubling, unlike Arons there is no motion before me to
sanction Siegert for his conduct or to disqualify his as
plaintiff's counsel.  Rather, it is defendant's conduct that is
the focus of the motion at issue.  Accordingly, there is no need
to determine whether Siegert's conduct constituted a violation of
New York Disciplinary Rule 7-104(a)(2).

order must be obeyed, even assuming its invalidity, until it is properly set aside." Leighton v. Paramount Pictures Corp., 340 F.2d 859, 861 (2d Cir. 1965), citing United States v. United Mine Workers, supra, 330 U.S. at 289-95. As the Supreme Court explained in Celotex Corp. v. Edwards, 514 U.S. 300, 306 (1995):

> In GTE Sylvania, Inc. v. Consumers Union of United States, Inc., 445 U.S. 375, 386, 100 S.Ct. 1194, 1201, 63 L.Ed.2d 467 (1980), we reaffirmed the well-established rule that "persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order."

See also In re Criminal Contempt Proceedings, 329 F.3d 131, 138 (2d Cir. 2003) (same); Milltex Indus. Corp. v. Jacquard Lace Co., Ltd., 55 F.3d 34, 41 n.14 (2d Cir. 1995) ("The fact that a court order might be unlawful does not, of course, give a lawyer or client license to violate it; to the contrary, the proper course is to adhere to the order until - and unless - it is vacated."); Fed. Trade Comm'n v. Verity Int'l, Ltd., 140 F. Supp.2d 313, 315 (S.D.N.Y. 2001), vacated as moot, 443 F.3d 48 (2d Cir. 2006) ("In most circumstances, the validity of an order is not an appropriate consideration on a contempt motion, as a court order ordinarily must be obeyed unless and until it is reversed or vacated."), citing Walker v. City of Birmingham, 388 U.S. 307, 317-21 (1967) and United States v. Cutler, 58 F.3d 825, 832 (2d Cir. 1995). Accord United States v. Rylander, 460 U.S. 752, 756 (1983) ("[A] contempt proceeding does not open to reconsideration

the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy.")

Thus, defendant's arguments concerning the alleged invalidity of the temporary restraining order also fail.

> 5.  Plaintiff's Alleged
>     Inability To Prove Its Damages

Finally, defendant argues that because plaintiff has failed to adequately support its claim that it suffered $4,050,000 in damages from defendant's alleged violation of the state court temporary restraining order, the contempt motion should be denied (Def.'s Contempt Motion I Opp. at 1, 2-3).

"The imposition of civil contempt sanctions may serve dual purposes:  to secure future compliance with court orders and to compensate the party that has been wronged." Paramedics Electromedia Comercial, Ltda. v. GE Med. Sys. Info. Tech., Inc., supra, 369 F.3d at 657; see also Int'l Union v. Bagwell, 512 U.S. 821, 829 (1994) ("A contempt fine accordingly is considered civil and remedial if it either 'coerce[s[ the defendant into compliance with the court's order, [or] . . . compensate[s] the complainant for losses sustained.'"), quoting United States v. United Mine Workers, 330 U.S. 258, 303-04 (1947).  Accord F.T.C. v. Verity Int'l, Ltd., supra, 443 F.3d at 70; Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd., 885 F.2d 1, 5 (2d Cir. 1989);

39

Perfect Fit Indus., Inc. v. Acme Quilting Co., 673 F.2d 53, 56-57 (2d Cir. 1982).

As noted above, the state court's temporary restraining order ceased to have effect after June 25, 2005 and, therefore, coercing defendant's future compliance is no longer an available remedy. Accordingly, the only civil contempt remedy available to plaintiff is compensatory damages.

"Compensatory sanctions should reimburse the injured party for its actual damages." New York State Nat'l Org. for Women v. Terry, supra, 886 F.2d at 1353; see also Equal Employment Opportunity Comm'n v. Local 638, supra, 81 F.3d at 1177; Perfect Fit Indus., Inc. v. Acme Quilting Co., supra, 673 F.2d at 57; Vuitton et Fils S.A. v. Carousel Handbags, 592 F.2d 126, 130 (2d Cir. 1979). A "claim of actual damages must be established by competent evidence and the amount must not be arrived at by mere speculation or conjecture." In re Walmar Screen Printing Co., 184 F. Supp. 858, 861 (E.D.N.Y. 1960), quoting Babee-Tenda Corp. v. Scharco Mfg. Co., 156 F. Supp. 582, 588 (S.D.N.Y. 1957). Accord King v. Allied Vision, Ltd., supra, 65 F.3d at 1062 ("'[S]ome proof of loss must be present to justify [a sanction's] compensatory aspects.'"), quoting New York State Nat'l Org. for Women v. Terry, supra, 886 F.2d at 1353-54; Theatre Confections, Inc. v. Sunstar Theatres Coral Springs, LLC, 03-CV-6006 (CJS), 2003 WL 21730694 at *1 (W.D.N.Y. June 6, 2003) ("Compensatory

sanctions should reimburse an injured party for its actual damages and may not be imposed absent some proof of actual loss.").

Here, plaintiff has failed to prove that it suffered any actual injury as a result of defendant's violating the state court's temporary restraining order. The only putative evidence that plaintiff submits in support of its claim for damages is an e-mail from defendant dated January 24, 2005, (see Choe Aff. ¶ 14 and Ex. 30), and the affidavit of Jerry Choe, Leadsinger's president, which states:

> Leadsinger is entitled to compensation for the damages suffered as a result of Edward Cole's contempt of two court orders. By e-mail dated January 24, 2005 (Exh. 30), the defendant wrote me about the opening order, minimum pallets, and prepacks to various customers. In fact, based upon his 20 some-odd year experience as a salesman, he exclaimed "[t]his is what I know we will do" [my emphasis]. After issuance of the court orders, Mr. Cole violated the order by contacting Best Buy, Walmart, Toys 'R Us, BJ's, Transworld Entertainment and Musicland, directly or indirectly through representatives and aborting deals. In fact, he even admitted speaking personally with representatives of Walmart and Best Buy. As a result, plaintiff lost $4 million in profits.

> Mr. Cole also violated the Order by contacting Leadsinger representatives after issuance of the court orders, with knowledge of them, and while they were in effect. Because of his statements, two representatives, i.e., Bell Marketing and Trend Marketing, ceased to perform their duties and Leadsinger was forced to replace them at a significant cost amounting to $50,000.

(Choe Aff. ¶¶ 14-15).

41

Neither defendant's January 24, 2005 e-mail nor Choe's affidavit provides evidence of actual injury to plaintiff as a result of defendant's alleged violation of the state court's temporary restraining order. On the contrary, plaintiff has misconstrued defendant's January 24, 2005 e-mail, which merely reflects defendant's hopes concerning possible orders by potential customers rather than a list of actual orders by current customers. As defendant points outs, the e-mail is riddled with phrases which indicate that Cole is referring to possible rather than actual orders, for example: "I think we can do . . . "; "We'll get . . ."; This is what I KNOW we will do . . ."; "I REALLY believe we'll get . . ." (see Choe Aff. Ex. 30). Plaintiff has not provided any contracts, invoices or similar documentation that would establish the existence of these putative orders. See, e.g., Time Warner Cable v. U.S. Cable T.V., Inc., 920 F. Supp. 321, 329 (E.D.N.Y. 1996) ("In civil contempt proceedings, the plaintiff is not entitled to compensation for damages that it did not actually experience.").

Moreover, plaintiff has failed to offer any evidence establishing a causal connection between defendant's allegedly contemptuous conduct during the relevant time period and the cancellation of these alleged orders or the need to replace the two marketing firms. Plaintiff is not entitled to compensatory damages without some evidence that defendant's contemptuous

42

conduct caused plaintiff to suffer actual damages. See, e.g.,
King v. Allied Vision, Ltd., supra, 65 F.3d at 1063 (explaining
that there was "'no proof of loss was offered on behalf [of
plaintiff], no evidence of actual injury due to [defendant's]
activities was shown and there was no evidence that awarding the
contempt sanction to [plaintiff] would have additional coercive
effect on defendant's behavior . . .'"), quoting New York State
Nat'l Org. for Women v. Terry, supra, 886 F.2d at 1354; U2 Home
Entm't, Inc. v. Hong Wei Int'l Trading, Inc., supra, 2005 WL
3766976 at *7 ("[N]one of Plaintiff's submissions on this con-
tempt motion shows any evidence of actual loss."); Perfect Fit
Ind., Inc. v. ACME Quilting Co., Inc., 77 Civ. 2004 (CBM), 1985
WL 376 at *3 (S.D.N.Y. Mar. 7, 1985) (explaining that compensa-
tory damages were not appropriate because plaintiff "failed to
prove actual monetary damages or loss as a result of [defen-
dant's] contumacious conduct beyond costs and counsel fees");
McKay v. Communispond, Inc., 581 F. Supp. 801, 810 (S.D.N.Y.
1983) ("[B]ecause plaintiff did not establish that he was injured
by defendant's conduct, his request for damages is denied."),
citing Vuitton et Fils, S.A. v. Carousel Handbags, supra, 592
F.2d at 130; Powell v. Ward, 487 F. Supp. 917, 936 (S.D.N.Y.
1980), aff'd as modified, 643 F.2d 924 (2d Cir. 1981) (denying
compensatory damages in a civil contempt action where plaintiffs
failed to show that they suffered any actual injury).

Nevertheless, "a court may assess attorney's fees as a sanction for the 'willful disobedience of a court order.'" Chambers v. NASCO, Inc., supra, 501 U.S. at 45, quoting Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 718 (1967); see also New York State Nat'l Org. for Women v. Terry, 159 F.3d 86, 96 (2d Cir. 1998) ("A finding that a condemnor's misconduct was willful strongly supports granting attorney's fees and costs to the party prosecuting the contempt."), citing Weitzman v. Stein, 98 F.3d 717, 719 (2d Cir. 1996); Vuitton et Fils S.A. v. Carousel Handbags, supra, 592 F.2d 126 at 130.

In order to establish willful contempt, it must be shown that the "contemnor had actual notice of the court's order, was able to comply with it, did not seek to have it modified, and did not make a good faith effort to comply." New York State Nat'l Org. for Women v. Terry, 952 F. Supp. 1033, 1043 (S.D.N.Y. 1997), aff'd, 159 F.3d 86 (2d Cir. 1998); see also Mingoia v. Crescent Wall Sys., 03 Civ. 7143 (THK), 2005 WL 991773 at *5 n.3 (S.D.N.Y. Apr. 26, 2005) (same), citing Bear U.S.A. Inc. v. William Kim, 71 F. Supp.2d 237, 249-250 (S.D.N.Y. 1999).

The record here contains clear and convincing evidence that defendant had (1) actual notice of the temporary restraining order and repeatedly acknowledged its existence in his correspondence; (2) never contested his ability to comply with it; (3)

44

never sought to have the order modified; and (4) did not make a good faith effort to comply with it.  Rather, after being served with the temporary restraining order on May 27, 2005, defendant contacted Jerry Choe and other members of Leadsinger's management, including K.H. Lee and Steve Kim, by e-mail on a nearly daily basis and sometimes many times per day (<u>see</u> Siegert 9/19/05 Aff. ¶ 20 and Ex. 20-23, collectively).

Accordingly, based on defendant's willful violation of Justice Smith's temporary restraining order, plaintiff is entitled to recover the reasonable attorney's fees it incurred in filing Contempt Motion I.  However, since plaintiff has failed to provide any documentation concerning its legal fees, plaintiff is directed to submit contemporaneous time records, as required by <u>New York State Ass'n for Retarded Children, Inc. v. Carey</u>, 711 F.2d 1136, 1147-48 (2d Cir. 1983), for all attorneys and staff who worked on Contempt Motion I, setting forth the date on which services were performed, the hours spent and the nature of the work performed, as well as the reasonable hourly rates requested.

6.  <u>Summary</u>

I conclude that plaintiff has shown by clear and convincing evidence that defendant willfully violated Justice Smith's clear and unambiguous temporary restraining order by repeatedly sending e-mails to members of Leadsinger's management

45

after being served with the order on May 27, 2005.  As outlined above in section II.B, the record shows that defendant contacted Jerry Choe and other members of Leadsinger's management, including K.H. Lee and Steve Kim, by e-mail on a nearly daily basis and sometimes many times per day from May 29, 2005 through and including June 13, 2005 (see Siegert 9/19/05 Aff. ¶ 20 and Ex. 20-23, collectively).  Defendant also does not argue that he was "reasonably diligent and energetic in attempting to accomplish what was ordered."  Equal Employment Opportunity Comm'n v. Local 638, supra, 753 F.2d at 1178.

Accordingly, I find that Cole is in civil contempt of Justice Smith's May 25th temporary restraining order.

However, since the temporary restraining order has now expired, and plaintiff has failed to establish that it suffered any actual injury as a result of defendant's willful violation of the order, the only sanction available is to award plaintiff its reasonable attorney's fees incurred in filing Contempt Motion I. Plaintiff is, therefore, directed to submit within ten (10) days of the date of this Order documentation pertaining to the legal fees plaintiff incurred in filing Contempt Motion I.

Furthermore, in light of the fact that Justice Smith's temporary restraining order has expired and since the record shows that plaintiff ceased sending e-mails once he retained counsel in mid-June 2005 (see Siegert Aff. ¶ 20), I do not find

that certification of the facts to the district court for crimi-
nal contempt proceedings, pursuant 28 U.S.C. § 636(e)(6), is
warranted in this instance.

E.  Contempt Motion II

In Contempt Motion II, plaintiff also moves for (1) an
Order holding defendant in civil contempt, (2) certification of
the facts to the district court for criminal contempt proceed-
ings, and (3) attorney's fees, based on defendant's alleged
violation of my September 26, 2005 Order (see Docket Items 40,
41, 42, 44).  My September 26, 2005 Order, as set forth above,
directed defendant to refrain from directly contacting plain-
tiff's principals (see Docket Items 26, 52).

As outlined above in section II.C, plaintiff not only
conceded actual knowledge of my Order in both letters and e-mails
(see Siegert 11/28/05 Aff. ¶ 5 and, collectively, Ex. 5), he also
candidly admitted that he violated my order and welcomed the
possibility of incarceration for his violations (see Siegert
11/28/05 Aff. ¶ 6 and, collectively, Ex. 6).

The record here shows that plaintiff sent e-mails to
Jerry Choe on October 26, 2005 and again from November 23 through
and including December 19, 2005 on a nearly daily basis and
sometime many times per day, with a few brief gaps around the
holidays (see Siegert 11/28/05 Aff. ¶ 4 and, collectively, Ex. 4;

47

Siegert 12/26/05 Decl. at ¶ 4 and, collectively, Ex. 4).  In addition, defendant sent e-mails to K.H. Lee and Steve Kim, both of whom are principles of Leadsinger, on October 17, 18 and 20, 2005 and again from November 1 through and including December 19, 2005 on a nearly daily basis and sometime many times per day (<u>see</u> Siegert 11/28/05 Aff. ¶ 4 and, collectively, Ex. 3; Siegert 12/26/05 Decl. at ¶ 4 and, collectively, Exs. 3-4).

In response to Contempt Motion II, defendant states: "I admit that I did make efforts to [contact plaintiff] via E-mail" (Letter from Edward J. Cole to my chambers, dated January 17, 2006 ("Cole 1/17/06 Letter"), at 2).  However, defendant first argues that because there is some indication in the record that Jerry Choe may not have read his e-mails, his conduct should be excused (<u>see</u> Cole 1/17/06 Letter at 2-3).  This argument is meritless.  As plaintiff properly notes, my Order clearly and unequivocally prohibited plaintiff from contacting plaintiff's principals (<u>see</u> Docket Item 26).  Indeed, during the September 23, 2005 hearing, I provided defendant with the following directive:

> Mr. Cole, the defendant, [is] not to have any direct contact with plaintiff, with Mr. Choe or Mr. Choe's immediate family.
>
> That is, he should not write to them.  <u>He should-n't e-mail them</u>.  He shouldn't call them. . . .

(9/23/05 Tr. at 185 (emphasis added)).  Whether or not
Leadsinger's principles read the prohibited e-mails is immaterial
to a finding of contempt.

Defendant next argues that because plaintiff has not
provided him with evidence substantiating its claim that K.H. Lee
and Steve Kim were principles of Leadsinger, his conduct should
also be excused (see Cole 1/17/06 Letter at 4).  Defendant,
however, has misconstrued the record.  Plaintiff has provided
evidence, in the form of affidavits from its attorney, indicating
that K.H. Lee is Leadsinger's vice-president, director and a
shareholder and that Steve Kim is Leadsinger's executive vice-
president, director and a shareholder (see Siegert 1/21/06 Decl.
at ¶ 7; Siegert 12/26/05 Decl. at ¶ 4; Siegert 11/28/05 Aff. at ¶
4).

Defendant also states that "[s]ince the hearing on
December 19, 2005, I have NOT attempted to contact the Plaintiff
and I sincerely apologize to you for my prior indiscretions"
(Cole 1/17/06 Letter at 4 (emphasis in original)).  It appears,
however, that defendant's request for leniency is disingenuous.
Even after I admonished defendant during my December 19, 2005
conference and reminded him in my Order of even date to refrain
from contacting plaintiff's principals, defendant continued to
engage in prohibited conduct:

> Mr. Cole is in error when he claims not to have sent
> any emails to Leadsinger [following the conference].

49

As a matter of fact . . . from December 27, 2005
through January 18, 2006, Mr. Cole sent 43 emails to
Leadsinger -- all addressed to K.H. Lee and Steve Kim,
who are principles of the company.  I have personal
knowledge of these emails because Mr. Cole sends copies
to me.

(Siegert 1/21/06 Decl. at ¶ 7).

1. <u>Civil Contempt</u>

Based on the record, I conclude that plaintiff has
shown by clear and convincing evidence that defendant violated my
September 26, 2005 Order, directing plaintiff to refrain from
directly contacting plaintiff's principals, by repeatedly sending
e-mails to Leadsinger's principals.  Defendant does not argue
that my September 26th Order was unclear or ambiguous, nor does
he claim that the evidence of his noncompliance is less than
clear and convincing.  Defendant also does not argue that he was
"reasonably diligent and energetic in attempting to accomplish
what was ordered."  <u>Equal Employment Opportunity Comm'n v. Local
638</u>, <u>supra</u>, 753 F.2d at 1178.

Accordingly, I find that Cole is in civil contempt of
my September 26, 2005 Order.

With respect to sanctions, as discussed above, "[t]he
imposition of civil contempt sanctions may serve dual purposes:
to secure future compliance with court orders and to compensate
the party that has been wronged."  <u>Paramedics Electromedia
Comercial, Ltda. v. GE Med. Sys. Info. Tech., Inc.</u>, <u>supra</u>, 369

F.3d at 657; see also Int'l Union v. Bagwell, supra, 512 U.S. at
829.

Plaintiff has not alleged that it suffered any actual
injury as a result of defendant's violating my September 26th
Order (see Siegert 11/28/05 Aff. at ¶ 7), therefore, a compensa-
tory sanction is not appropriate here.  However, because I find
that defendant willfully violated my September 26th Order,
plaintiff is entitled to receive the reasonable attorney's fees
it incurred in filing Contempt Motion II.  See New York State
Nat'l Org. for Women v. Terry, supra, 159 F.3d at 96.  Again,
because plaintiff has failed to provide the documentation re-
quired by New York State Ass'n for Retarded Children, Inc. v.
Carey, supra, 711 F.2d at 1147-48, concerning the legal fees
incurred in filing Contempt Motion II, plaintiff is directed to
submit such documentation within ten (10) days of the date of
this Order.

As for coercive sanctions, the Honorable Sidney H.
Stein, United States District Judge, recently outlined the
factors a district court should consider in imposing a coercive
sanction:

> If a party is adjudged to be in civil contempt,
> the court must determine what sanctions are necessary
> to secure future compliance with its order and to
> compensate the complaining party for past noncompli-
> ance.  See Paramedics Electromedicina[ Comercial, Ltda.
> v. GE Med. Sys. Info. Tech., Inc., supra,] 369 F.3d at
> 657.  A district court has considerable discretion in
> determining whether a coercive sanction is necessary

and, if so, the form it will take.  $\underline{Id}$ .  When imposing
a coercive sanction, a court should consider (1) the
character and magnitude of the harm threatened by the
continued contumacy, (2) the probable effectiveness of
the sanction in bringing about compliance, and (3) the
contemnor's financial resources and the consequent
seriousness of the sanction's burden.  $\underline{Id}$ . at 657-58
(citing Perfect Fit Indus. v. Acme Quilting Co., 673
F.2d 53, 57 (2d Cir.1982)).  Arrest is an appropriate
coercive sanction for civil contempt, so long as its
purpose is not punitive but is instead to compel the
contemnor to perform the required act.  Cf. Hicks v.
Feiock, 485 U.S. 624, 631-34, 108 S.Ct. 1423, 99
L.Ed.2d 721 (1988) (explaining distinction between
civil and criminal contempt and noting that imprison-
ment is appropriate sanction for civil contempt if
remedial in nature, i.e. if conditioned upon compli-
ance).

Bank of Credit & Commerce Int'l (Overseas) Ltd. v. Tamraz, supra,

2006 WL 1643202 at *3; see also Dole Fresh Fruit Co. v. United

Banana Co., supra, 821 F.2d at 110 (same).

Here, the character and magnitude of the harm threat-

ened by defendant's continued violation of my September 26th

Order, given the heated nature of the relationship between Cole

and Choe, should not be trivialized.  The constant e-mails from

defendant to plaintiff's principles generate far more heat than

they do light in the context of this litigation, especially those

in which the defendant uses the threat of exposing Choe's alleged

criminal activity to law enforcement and Choe's family members as

a means of extorting a settlement in this matter.  Based on

defendant's continued violation of my September 26th Order, some

monetary sanction is called for in order to coerce future compli-

ance with my Order.  The need for a monetary sanction is high-

lighted by the fact that even after I warned defendant during my December 19, 2005 conference that I was considering whether I should refer this matter to the United States Attorney for the Southern District of New York, defendant continued to engage in prohibited conduct by sending e-mails to K.H. Lee and Steve Kim (see Siegert 1/21/06 Decl. at ¶ 7). Defendant, however, has repeatedly claimed that he lacks financial resources and is considering filing for bankruptcy (see, e.g., 12/19/05 Tr. at 3-5). The type of coercive sanction imposed here, however, will be prospective and conditional. Thus, defendant will not have to pay the sanction so long as he complies with my September 26th Order.

Accordingly, commencing on the date of this Order, for each violation of my September 26th Order, defendant shall be required to pay a fine to the Clerk of the Court based on the following schedule: $500 for the first violation, $1000 for the second violation, $2000 for the third violation, and so on; the fine shall double for every subsequent act of noncompliance. See Titra California, Inc. v. Titra Film, 98 Civ. 234 (KMW)(FM), 2001 WL 1382587 at *5 (S.D.N.Y. Nov. 6, 2001) ("In the absence of any loss to the complainant, any fine that may be imposed is necessarily coercive, rather than compensatory, and therefore should be made payable to the court."), citing New York State Nat'l Org. for Women v. Terry, supra, 886 F.2d at 1354.

2. Criminal Contempt

    With respect to plaintiff's application for an order
holding defendant in criminal contempt, the Court of Appeals for
the Second Circuit has explained that "[a] trial court ordinarily
first applies the coercive remedy of civil contempt and only
makes use of the criminal sanction when the disobedience contin-
ues." United States v. Petito, 671 F.2d 68, 72 (2d Cir. 1982);
see also In re de Kleinman, 923 F. Supp. 24, 29 (S.D.N.Y. 1996).
Accord Yates v. United States, 355 U.S. 66, 75 (1957) ("[T]he
more salutary procedure would appear to be that a court should
first apply coercive remedies in an effort to persuade a party to
obey its orders, and only make use of the more drastic criminal
sanctions when the disobedience continues."); United States v.
Rosado, 728 F.2d 89, 94 n.4 (2d Cir. 1984) ("In imposing contempt
sanctions federal courts should 'resort to criminal sanctions
only [if] the civil remedy is inappropriate.'"), quoting
Shillitani v. United States, supra, 384 U.S. at 371 n.9.

        Nevertheless, the "[r]efusal to obey a court order may
subject a person to both civil and criminal contempt for the same
acts."  In re Grand Jury Witness, 835 F.2d 437, 441 (2d Cir.
1987), citing Yates v. United States, supra, 355 U.S. at 74; see
also Sec. Exch. Comm'n  v. American Bd. of Trade, Inc., 830 F.2d
431, 439 (2d Cir. 1987) ("When a district court's order has been

violated, the court may impose either civil contempt remedies or criminal contempt sanctions, or both."); Universal City Studios, Inc. v. N.Y. Broadway Int'l Corp., 705 F.2d 94, 96 (2d Cir. 1983) ("Though the use of judicial power to secure future compliance with a court order involves civil contempt remedies, the use of such power in the aftermath of past violations can take the form of either civil contempt remedies or criminal contempt punishments, or both." (internal citations omitted)).

As noted above, in hope of coercing defendant's future compliance with my September 26th Order, I admonished defendant on December 19, 2005 to refrain from contacting plaintiff's principals and warned him that I was considering whether I should refer this matter to the United States Attorney for the Southern District of New York for criminal prosecution (see 12/19/05 Tr. at 6-7, 9-11). Nevertheless, it appears from the record that defendant failed to heed my clear warning and defiantly continued to engage in prohibited conduct by sending e-mails to K.H. Lee and Steve Kim (see Siegert 1/21/06 Decl. at ¶ 7). Thus, it is clear that defendant's disobedience continued even after he was warned of the possibility of criminal prosecution. Accordingly, I find that there is reason to believe that Cole is also in criminal contempt of my September 26, 2005 Order.

The procedural requirements for criminal contempt proceedings were recently outlined by the Honorable John G.

Koeltl, United States District Judge, in <u>JSC Foreign Econ. Ass'n</u>

<u>Technostroyexport v. Int'l Dev. & Trade Servs., Inc.</u>, <u>supra</u>, 2006

WL 1206372 at *6-*7:

> [Plaintiff] also seeks to have [defendant] sanc-
> tioned for criminal contempt. 18 U.S.C. § 401 autho-
> rizes a United States Court to "punish by fine or
> imprisonment, or both, at its discretion, such contempt
> of its authority . . . as . . . [d]isobedience or
> resistance to its lawful writ, process, order, rule,
> decree, or command." 18 U.S.C. § 401. To hold a
> defendant in criminal contempt, it must be proven
> beyond a reasonable doubt "that (1) the court entered a
> reasonably specific order; (2) defendant knew of that
> order; (3) defendant violated that order; and (4) his
> violation was willful." <u>United States v. Cutler</u>, 58
> F.3d 825, 834 (2d Cir. 1995). To establish the final
> element of willfulness, which, as explained above, need
> not be shown to hold a person in civil contempt, the
> criminal contempt must have been committed with "a
> specific intent to consciously disregard an order of
> the court." <u>United States v. Lynch</u>, 162 F.3d 732, 735
> (2d Cir. 1998) (internal quotation marks and citations
> omitted).
>
> Pursuant to Rule 42(a) of the Federal Rules of
> Criminal Procedure, punishment for criminal contempt
> must take place after "prosecution on notice."
> Fed.R.Cr.P. 42(a). "The Court must request that the
> contempt be prosecuted by an attorney for the govern-
> ment, unless the interest of justice requires the
> appointment of another attorney." Fed.R.Cr.P.
> 42(a)(2). The Court must give the alleged contemnor
> "notice in open court" of the prosecution, and the
> notice must include "the essential facts constituting
> the charged criminal contempt." Fed.R.Cr.P.
> 42(a)(1)(C). The right to a trial by jury is also
> guaranteed for "serious" criminal contempt allegations
> potentially resulting in more than six months imprison-
> ment. <u>Int'l Union, United Mine Workers v. Bagwell</u>, 512
> U .S. 821, 826-27 (1994); <u>see also</u> Fed. R. Cr. P.
> 42(a)(3).

Accordingly, I find based on the record here that there

is reason to believe that Cole is in criminal contempt of my

September 26, 2005 Order.  As a result, and in accordance with
Rule 42 of the Federal Rules of Criminal Procedure, defendant is
hereby placed on notice that I shall refer this matter to the
United States Attorney's Office for the Southern District of New
York for investigation and, if the United States Attorney deems
it appropriate, prosecution.  See <u>JSC Foreign Econ. Ass'n
Technostroyexport v. Int'l Dev. & Trade Servs., Inc.</u>, <u>supra</u>, 2006
WL 1206372 at *6-*7.

F.  <u>Contempt Motion III</u>

_____Finally, in Contempt Motion III plaintiff moves for
"judgment against defendant pursuant to the Court's inherent
authority and to the extent applicable, [Fed.R.Civ.P.] 16," based
on defendant's repeated violation of my September 26, 2005 Order
(<u>see</u> Docket Items 45, 46, 47, 48, 49).

Plaintiff appears to be arguing that my September 26th
Order should be considered part of the Rule 16 pretrial order
entered in this action (<u>see</u> Docket Item 6) and, therefore, that a
violation of that order forms the basis for the entry of a
default judgment.[11]

_____

[11]The only authority that plaintiff cites in support of its
application for the entry of a default judgment against defendant
is an isolated excerpt from James Wm. Moore <u>et al</u>., <u>Moore's
Federal Practice</u> § 16.92[4], dealing with Rule 16 sanctions
imposed on a client when "noncompliance with a court order is the
product not of inadvertence, but of a tactical decision made to
(continued...)

Although federal courts have a vast array of sanctions available to them under Rules 16(f) and 37(b) of the Federal Rules of Civil Procedure, a court may not strike an answer or issue a default judgment against a defendant as a means of punishing that defendant's contempt of court on a matter that is unrelated to the merits of the underlying action. As the Court of Appeals for the Ninth Circuit explained in <u>TeleVideo Systems, Inc. v. Heidenthal</u>, 826 F.2d 915, 916-17 (9th Cir. 1987):

> There are limits, however, on the power of courts to impose sanctions. The need for the orderly administration of justice does not permit violations of due process. <u>See</u> <u>Phoceene Sous Marine, S.A. v. U.S. Phosmarine, Inc.</u>, 682 F.2d 802, 805-06 (9th Cir. 1982) (recognizing that willful deceit and conduct utterly inconsistent with the orderly administration of justice would merit the imposition of severe sanctions, but finding that because defendant's deceit -- falsely stating that he was too ill to attend trial -- was unrelated to the merits of the controversy the sanction was inconsistent with due process); <u>Securities and Exchange Commission v. Seaboard Corp.</u>, 666 F.2d 414, 416-17 (9th Cir. 1982) (finding that a default judgment against the defendant for failure to pay a fine when the defendant had complied with an order to give a deposition was punitive and a violation of due process as the court could not presume that the case lacked merit); <u>see also</u> <u>Hammond Packing Co. v. Arkansas</u>, 212 U.S. 322, 349-54, 29 S.Ct. 370, 379-81, 53 L.Ed. 530

---

[11](...continued)
try to secure some advantage," and an unpublished Second Circuit opinion, <u>Blum v. Schlegel</u>, 96-7705, 96-7723, 1997 WL 138741 at *1-*2 (2d Cir. Mar. 21, 1997), where the Circuit affirmed the district court's dismissal of a complaint with prejudice, pursuant to Fed.R.Civ.P. 37(b)(2), as a civil contempt sanction for plaintiff's violation of a protective order. However, neither of these authorities supports plaintiff's application for the entry of a default judgement against defendant based on his failure to comply with my September 26, 2005 no-contact order.

> (1909) (upholding a default judgment for the defen-
> dant's failure to comply with an order to produce
> documents because the court could presume, from the
> failure to produce evidence relating directly to the
> merits of the matter, that the case was lacking in
> merit); <u>Hovey v. Elliott</u>, 167 U.S. 409, 413-14, 17
> S.Ct. 841, 843, 42 L.Ed. 215 (1897) (finding that
> courts may not strike an answer and enter a default
> merely to punish a contempt of court unrelated to
> merits of case).

<u>See</u> <u>also</u> <u>Collazos v. United States</u>, 368 F.3d 190, 202-03 (2d Cir.

2004) ("The common principle to be derived from [<u>Hovey</u> and

<u>McVeigh v. United States</u>, 78 U.S. (11 Wall.) 259 (1870)], as the

Supreme Court observed in <u>Degen[ v. United States</u>, 517 U.S. 820,

828 (1996)], is that disentitlement may not constitutionally be

employed simply 'as punishment.'"); <u>Hudson Tire Mart, Inc. v.</u>

<u>Aetna Cas. & Sur. Co.</u>, 518 F.2d 671, 674 (2d Cir. 1975) (compar-

ing <u>Hammond</u> and <u>Hovey</u> and discussing the distinction between

striking an answer and entering a default judgment as punishment

for contempt, as compared with the entry of a default judgment

"for failure to produce documents on the ground that failure to

do so created a presumption of no merit to the defense"); <u>Duell</u>

<u>v. Duell</u>, 178 F.2d 683, 687 (D.C. Cir. 1950) (comparing <u>Hammond</u>

and <u>Hovey</u> and finding that "[t]he court's action in striking the

answer and rendering a default judgment was erroneous for the

further reason that civil contempt may not be punished in that

fashion unless it grows out of a defendant's failure to produce,

when ordered to do so, material evidence in his possession or

under his control"); <u>The Fred M. Lawrence</u>, 94 F. 1017, 1018 (2d

Cir. 1899) (noting <u>Hovey</u>'s prohibition on striking an answer or entering a default judgment as punishment for defendant's contemptuous conduct); <u>Burke v. ITT Automotive, Inc.</u>, 139 F.R.D. 24, 31-32 (W.D.N.Y. 1991) (comparing <u>Hammond</u> and <u>Hovey</u> and explaining that "'[t]hese decisions establish that there are constitutional limitations upon the power of courts, even in aid of their own valid processes, to dismiss an action without affording a party the opportunity for a hearing on the merits of his cause'"), <u>quoting Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers</u>, 357 U.S. 197, 209 (1958); <u>Bollard v. Volkswagen of Am., Inc.</u>, 56 F.R.D. 569, 585 (W.D. Mo. 1971) (comparing <u>Hammond</u> and <u>Hovey</u> and noting "[t]he existence of the distinction between mere punishment of a party's violation of an order as for contempt and striking a pleading and entering judgment by default under statutory authority allowing such procedure, where violation of an order indicates the lack of merit in a defense").

Although I mentioned during the September 23, 2005 hearing that my Order was "more in the nature of a case management order" (9/23/05 Tr. at 185), it is clear that my Order was not related to the merits of this action or the production of evidence.  Unlike the standard provisions contained in a Rule 16 pretrial order, <u>i.e.</u>, setting deadlines for amendments to the pleadings, discovery, dispositive motions or settlement confer-

ences, my order dealt only with prohibiting defendant from contacting plaintiff's principles or their family members.

Based on the foregoing authorities, since my September 26, 2005 no-contact order was completely unrelated to the merits of this action or the production of putative evidence, the entry of a default judgment against defendant as a contempt sanction for violating my order is not appropriate. Accordingly, plaintiff's application for the entry of a default judgment as against defendant based on Cole's continued violation of my September 23, 2005 Order is denied.

IV. <u>Conclusion</u>

With respect to Contempt Motion I, plaintiff's motion is granted to the following extent: (1) the caption shall be amended to reflect plaintiff's correct corporate name, "ES Electrosales Leadsinger Co. Ltd;" (2) defendant is found to be in civil contempt of Justice Smith's May 25, 2005 temporary restraining order, and (3) plaintiff is entitled to the reasonable attorney's fees it incurred in filing Contempt Motion I and, therefore, is directed to submit within ten (10) days of the date of this Order documentation pertaining to its legal fees. However, Contempt Motion I is denied to the following extent: (1) the facts will not be certified to the district court for

criminal contempt proceedings and (2) plaintiff is not entitled to $4,050,000 in compensatory damages.

With respect to Contempt Motion II, plaintiff's motion is granted to the following extent: (1) defendant is found to be in civil contempt of my September 26, 2005 Order; (2) plaintiff is entitled to the reasonable attorney's fees it incurred in filing Contempt Motion II and, therefore, is directed to submit within ten (10) days of the date of this Order documentation pertaining to its legal fees; (3) commencing with the date of this Order, for each violation of my September 26th Order, defendant shall be required to pay a fine to the Clerk of the Court based on the following schedule: $500 for the first violation, $1000 for the second violation, $2000 for the third violation, and so on; the fine shall double for every subsequent act of noncompliance, and (4) I conclude that there is reason to believe that Cole is in criminal contempt of my September 26, 2005 Order. Therefore, in accordance with Rule 42 of the Federal Rules of Criminal Procedure, defendant is hereby placed on notice that I shall refer this matter to the United States Attorney's Office for the Southern District of New York for investigation and, if the United States Attorney deems it appropriate, prosecution.

Finally, with respect to Contempt Motion III, plaintiff's application for the entry of a default judgment as against

defendant based on Cole's continued violation of my September 23, 2005 Order is denied.

Dated:   New York, New York
         August 4, 2006

SO ORDERED

_____
HENRY PITMAN
United States Magistrate Judge

Copies transmitted to:

Mr. Edward J. Cole
13612 Marshall Lane
Tustin, CA 92780

Paul W. Siegert, Esq.
49 West 33rd Street
New York, New York  10001