UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

LEADSINGER, INC.,                        :

                        Plaintiff,       :      05 Civ. 5606 (HBP)

     -against-                           :      OPINION
                                                AND ORDER
EDWARD J. COLE,                          :____

                        Defendant.       :

----------------------------------X


            PITMAN, United States Magistrate Judge


I.  Introduction


            By notice of motion dated September 22, 2005 (Docket

Item 22), defendant moves (1) for an Order, pursuant to Rule 56

of the Federal Rules of Civil Procedure, granting summary judg-

ment and dismissing the second amended complaint based on the

doctrine of judicial estoppel and (2) for an Order, pursuant to

Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissing

the seven claims asserted in the second amended complaint on the

ground that they all fail to state claims upon which relief can

be granted.

            The parties have consented to my exercising plenary

jurisdiction over this action pursuant to 28 U.S.C. § 636(c)

(Docket Item 7).

            For the reason set forth below, defendant's motion is

granted in part and denied in part.

II. <u>Facts</u>

Plaintiff, ES Electrosales Leadsinger Co. Ltd. ("Leadsinger"), is in the business of selling karaoke products on both a wholesale and retail basis. On or about April 20, 2004, plaintiff entered into a contract with defendant, Edward J. Cole, making Cole Leadsinger's national sales manager for a one-year period (<u>see</u> Second Amended Complaint ("2d Am. Compl."), at ¶¶ 4-5 (Docket Item 21); <u>see also</u> Ex. G annexed to the Affirmation of Kenneth S. Levine, Esq., dated September 21, 2005 ("Levine Aff.")).

Although the contract contained an automatic extension provision, plaintiff alleges that Cole resigned from his position several days before the contract expired (2d Am. Compl. ¶¶ 6-7).

Plaintiff further alleges that Cole was to be compensated for his services by commissions based on a formula set forth in the contract. Plaintiff claims, however, that Cole failed to repay Leadsinger $300,000 in advances on his commissions, which Cole requested and received, but never earned (2d Am. Compl. ¶¶ 8-10).

In addition, plaintiff alleges that Cole, both personally, as well as through his sister, Sharon Cole, acting as his agent, violated the confidentiality provision in the contract by sending e-mails "to Leadsinger's employees and/or representatives disparaging Leadsinger and unjustifiably attempting to

create doubt about the quality of Leadsinger's products to thereby interfere with sales" (2d Am. Compl. ¶ 17).

Plaintiff also claims that beginning in or about April 15, 2005, Cole and his sister began sending e-mails to the plaintiff's principles in which they threatened, <u>inter</u> <u>alia</u>, to interfere with Leadsinger's business relationships, as well as threatening to contact the family of Leadsinger's president, Jerry Choe, and disclose Choe's alleged personal indiscretions (2d Am. Compl. ¶¶ 20-22).

Plaintiff commenced this action on April 22, 2005, by filing a verified complaint in the Supreme Court of the State of New York, New York County, seeking a preliminary injunction and damages against defendant based on the following claims: (1) injurious falsehood, (2) interference with contract, and (3) interference with prospective advantage. The complaint further alleged that defendant "received advances exceeding any commissions he may have earned" (Levine Aff. Ex. A).

Also on April 22, 2005, plaintiff filed an application for an order to show cause and an <u>ex</u> <u>parte</u> temporary restraining order against defendant (Levine Aff. Ex. B). On April 26, 2005, the Honorable Karen Smith, Justice, Supreme Court of the State of New York, New York County, declined to sign the order because plaintiff was "seek[ing] monetary relief for the alleged wrong committed by defendant" and, therefore, "a TRO or preliminary and

permanent injunctive relief [was] not appropriate" (Levine Aff. Ex. B).

Following Justice Smith's denial, plaintiff filed a supplemental affidavit in support of its application for an order to show cause and an amended verified complaint, stating in both that damages were being asserted in relation to only one customer -- HH Gregg Appliances and Electronics ("HH Gregg") -- while injunctive relief was being sought for Leadsinger's other customers (Levine Aff. Exs. C-D). On April 27, 2005, Justice Smith signed the order to show cause and entered a temporary restraining order against defendant (Levine Aff. Ex. E).

The case was subsequently removed from the Supreme Court of the State of New York, New York County, to this Court by Notice of Removal filed June 15, 2005 (Docket Item 1). Federal jurisdiction is based on diversity of citizenship. See 28 U.S.C. § 1332(a)(1).

Following removal, plaintiff filed a second amended complaint on September 13, 2005 (Docket Item 21), asserting the following seven claims: (1) breach of contract (2d Am. Compl. ¶¶ 1-10), (2) unjust enrichment (2d Am. Compl. ¶¶ 11-14), (3) tortious interference with contract and an additional breach of contract claim (2d Am. Compl. ¶¶ 15-26), (4) tortious interference with prospective economic advantage (2d Am. Compl. ¶¶ 27-32), (5) injurious falsehood (2d Am. Compl. ¶¶ 33-36), (6) prima

4

facie tort (2d Am. Compl. ¶¶ 37-39), and (7) a request for permanent injunctive relief (2d Am. Compl. ¶¶ 40-44).

As noted above, by notice of motion dated September 22, 2005 (Docket Item 22), defendant now moves for summary judgment and/or to dismiss the second amended complaint.

## III. Analysis

        A.    Standards Applicable to a
              Motion for Summary Judgment and
              a Motion to Dismiss the Complaint

The standards applicable to a motion for summary judgment are well-settled and require only brief review.

> Summary judgment shall be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). This form of relief is appropriate when, after discovery, the party -- here plaintiff -- against whom summary judgment is sought, has not shown that evidence of an essential element of her case -- one on which [he] has the burden of proof -- exists. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This form of remedy is inappropriate when the issue to be resolved is both genuine and related to a disputed material fact. An alleged factual dispute regarding immaterial or minor facts between the parties will not defeat an otherwise properly supported motion for summary judgment. See Howard v. Gleason Corp., 901 F.2d 1154, 1159 (2d Cir. 1990). Moreover, the existence of a mere scintilla of evidence in support of nonmovant's position is insufficient to defeat the motion; there must be evidence on which a jury could reasonably find for the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
>
> If the movant demonstrates an absence of a genuine issue of material fact, a limited burden of production

> shifts to the nonmovant, who must "demonstrate more
> than some metaphysical doubt as to the material facts,"
> and come forward with "specific facts showing that
> there is a genuine issue for trial." <u>Aslanidis v.</u>
> <u>United States Lines, Inc.</u>, 7 F.3d 1067, 1072 (2d Cir.
> 1993). If the nonmovant fails to meet this burden,
> summary judgment will be granted against it.

<u>Powell v. Nat'l Bd. of Med. Exam'rs</u>, 364 F.3d 79, 84 (2d Cir.

2004); <u>accord</u> <u>Jeffreys v. City of New York</u>, 426 F.3d 549, 553-54

(2d Cir. 2005); <u>Gallo v. Prudential Residential Servs., Ltd.</u>, 22

F.3d 1219, 1223-24 (2d Cir. 1994). "The party seeking summary

judgment has the burden to demonstrate that no genuine issue of

material fact exists. . . . In determining whether a genuine

issue of material fact exists, a court must examine the evidence

in the light most favorable to, and draw all inferences in favor

of, the non-movant . . . . Stated more succinctly, '[t]he

evidence of the non-movant is to be believed.'" <u>Lucente v. Int'l</u>

<u>Bus. Machs. Corp.</u>, 310 F.3d 243, 253-54 (2d Cir. 2002) (citations

omitted). <u>See</u> <u>also</u> <u>Jeffreys v. City of New York</u>, <u>supra</u>, 426 F.3d

at 553 ("Assessments of credibility and choices between conflict-

ing versions of the events are matters for the jury, not for the

court on summary judgment."); <u>accord</u> <u>Make the Road by Walking,</u>

<u>Inc. v. Turner</u>, 378 F.3d 133, 142 (2d Cir. 2004); <u>Dallas Aero-</u>

<u>space, Inc. v. CIS Air Corp.</u>, 352 F.3d 775, 780 (2d Cir. 2003).

The Court of Appeals for the Second Circuit has ex-

plained that "in determining whether the moving party has met

[its] burden of showing the absence of a genuine issue for trial,

the district court may not rely solely on the statement of undisputed material facts contained in the moving party's Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion." Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004); see also Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003).

The standards applicable to a motion to dismiss pursuant to Rule 12(b)(6) are also well-settled and require only brief review.

> When deciding a motion to dismiss under Rule 12(b)(6), [the court] must accept as true all well-pleaded factual allegations of the complaint and draw all inferences in favor of the pleader. See City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493, 106 S.Ct. 2034, 90 L.Ed.2d 480 (1986); Miree v. DeKalb County, 433 U.S. 25, 27 n.2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977) (referring to "well-pleaded allegations"); Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993). "'[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'" Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991)). The Court also may consider "matters of which judicial notice may be taken." Leonard T. v. Israel Discount Bank of New York, 199 F.3d 99, 107 (2d Cir. 1999) (citing Allen v. WestPoint-Pepperill, Inc., 945 F.2d 40, 44 (2d Cir. 1991)). In order to avoid dismissal, a plaintiff must do more than plead mere "[c]onclusory allegations or legal conclusions masquerading as factual conclusions." Gebhardt v. Allspect, Inc., 96 F. Supp.2d 331, 333 (S.D.N.Y. 2000) (quoting 2 James Wm. Moore, Moore's Federal Practice ¶ 12.34[a] [b] (3d ed. 1997)). Dismissal is proper only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his

claim which would entitle him to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); <u>accord</u> <u>Cohen v. Koenig</u>, 25 F.3d 1168, 1172 (2d Cir. 1994).

<u>Hoffenberg v. Bodell</u>, 01 Civ. 9729 (LAP), 2002 WL 31163871 at *3 (S.D.N.Y. Sept. 30, 2002). <u>See also</u> <u>McKenna v. Wright</u>, 386 F.3d 432, 436 (2d Cir. 2004); <u>Phillip v. Univ. of Rochester</u>, 316 F.3d 291, 293-94 (2d Cir. 2003); <u>Bruce v. United States Dep't of Justice</u>, 314 F.3d 71, 73-74 (2d Cir. 2002); <u>Cole v. Moraflor</u>, 02 Civ. 9981 (RWS), 2006 WL 457817 at *2 (S.D.N.Y. Feb. 23, 2006); <u>George v. New York City Health & Hosp. Corp.</u>, 02 Civ. 1818 (AGS), 2003 WL 289617 at *2 (S.D.N.Y. Feb. 11, 2003).

Defendant seeks dismissal of the second amended complaint based on two principle theories: (1) summary judgment should be granted, dismissing any claims seeking damages for customers other than HH Gregg, based on the doctrine of judicial estoppel (Memorandum of Law in Support of Defendant's Motion to Dismiss and Motion for Summary Judgment, dated September 20, 2005 ("Def.'s Mem."), at 3-5) and (2) each of the seven claims asserted fails to state a claim upon which relief can be granted (Def.'s Mem. at 5-12).[1]

---

[1]Defendant, now <u>pro</u> <u>se</u>, has also sent numerous letters to my chambers in which he attempts to attack the merits of plaintiff's claims by referencing documents that are extrinsic to the pleadings. However, as discussed at length above, "[o]n a motion to dismiss, the Court does not take into account extrinsic evidence or resolve factual disputes." <u>Nelson v. Stahl</u>, 173 F. Supp.2d 153, 166 (S.D.N.Y. 2001).

B.  Judicial Estoppel

       Defendant first argues that summary judgment should be granted and plaintiff judicially estopped from asserting any claims in the second amended complaint for damages concerning any customers other than HH Gregg (see Def.'s Mem. at 3-5).  Specifically, defendant claims that plaintiff made prior representations to the state court limiting its damage claims to HH Gregg only, in connection with its application for an order to show cause and a temporary restraining order.  Defendant argues that these representations were relied upon by the state court in granting a temporary restraining order.  Defendant contends that plaintiff's prior representations are clearly inconsistent with its claims in the second amended complaint for damages concerning customers other than HH Gregg and, therefore, plaintiff should now be judicially estopped from seeking damages with respect to those customers (see Def.'s Mem. at 4-5; see also Reply Memorandum of Law in Support of Defendant's Motion to Dismiss and Motion for Summary Judgment, dated October 28, 2005 ("Def.'s Reply Mem."), at 1-3).

       The doctrine of judicial estoppel was recently discussed by the Supreme Court in Zedner v. United States, 126 S.Ct. 1976, 1987 (2006):

       As this Court has explained:

"'[W]here a party assumes a certain position
in a legal proceeding, and succeeds in maintaining
that position, he may not thereafter, simply be-
cause his interests have changed, assume a con-
trary position, especially if it be to the preju-
dice of the party who has acquiesced in the posi-
tion formerly taken by him.' Davis v. Wakelee,
156 U.S. 680, 689, 15 S.Ct. 555, 39 L.Ed. 578
(1895). This rule, known as judicial estoppel,
'generally prevents a party from prevailing in one
phase of a case on an argument and then relying on
a contradictory argument to prevail in another
phase.' Pegram v. Herdrich, 530 U.S. 211, 227, n.
8, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000)." New
Hampshire v. Maine, 532 U.S. 742, 749, 121 S.Ct.
1808, 149 L.Ed.2d 968 (2001).

Although this estoppel doctrine is equitable and
thus cannot be reduced to a precise formula or test,
"several factors typically inform the decision whether
to apply the doctrine in a particular case: First, a
party's later position must be clearly inconsistent
with its earlier position. Second, courts regularly
inquire whether the party has succeeded in persuading a
court to accept that party's earlier position . . . .
A third consideration is whether the party seeking to
assert an inconsistent position would derive an unfair
advantage or impose an unfair detriment on the opposing
party if not estopped." Id., at 750-751, 121 S.Ct.
1808 (citations and internal quotation marks omitted).

See also Uzdavines v. Weeks Marine, Inc., 418 F.3d 138, 148 (2d

Cir. 2005) ("Our circuit has consistently limited the application

of judicial estoppel to 'situations where a party both takes a

position that is inconsistent with one taken in a prior proceed-

ing, and has had that earlier position adopted by the tribunal to

which it was advanced.'"), quoting Stichting v. Schreiber, 407

F.3d 34, 45 (2d Cir. 2005). Accord Simon v. Safelite Glass

Corp., 128 F.3d 68, 71-72 (2d Cir. 1997); Bates v. Long Island

R.R. Co., 997 F.2d 1028, 1037-38 (2d Cir. 1993).

10

### 1. Plaintiff's Prior Positions
### Are Clearly Inconsistent With Some of
### Those Taken in the Second Amended Complaint

The first inquiry is whether plaintiff's current position with respect to damages is "clearly inconsistent" with the position it previously took in its supplemental affidavit in support of an order to show cause and its first amended complaint, limiting damages to HH Gregg only. See Zedner v. United States, supra, 126 S.Ct. at 1987; New Hampshire v. Maine, supra, 532 U.S. at 750-51; Uzdavines v. Weeks Marine, Inc., supra, 418 F.3d at 148. Plaintiff claims that its representations concerning damages were necessitated by a mere "technical defect involv[ing] [its] combining a legal and equitable claim into one cause of action" (Affidavit of Paul W. Siegert, Esq. in Opposition to Motion to Dismiss the Complaint and for Summary Judgment, sworn to on October 21, 2005 ("Siegert Aff."), at ¶¶ 4-7).

After Justice Smith denied plaintiff's first application for an order to show cause, plaintiff filed a supplemental affidavit in support of an order to show cause and an amended verified complaint (see Levine Aff. Exs. C-D). In its supplemental affidavit, Jerry Choe, Leadsinger's president, stated:

> 3. My previous papers were inartfully drawn. Plaintiff meant to inform this Court that damages were only being sought for defendant's breach of contract in conjunction with one customer, HH Gregg Appliances and Electronics, 41515 East 96th Street, Indianapolis, IN 46240. Defendant breached the confidentiality provi-

sion of the agreement by disclosing information to HH
Gregg which violated that provision.  Damages are being
sought solely in connection with HH Gregg.

    4.    However, an injunction is being sought for
all other customers as described in my previous affida-
vit because defendant has not, as yet, sought to de-
stroy plaintiff with respect to customers such as
Target, Circuit City, Best Buy, K-Mart, Walmart, Toy's
'R Us, Sam's, Costco, Frys, Fred Meyer, and Meijers.
The injunction is sought with respect to them and
prospective customers of Leadsinger of which defendant
is aware.

    5.    The amended complaint reflects this and is
annexed.

(Levine Aff. Ex. C).

In its first amended complaint, plaintiff asserted the
following damage claims based on Cole's alleged violation of his
contract's confidentiality provision and/or his contacts with
Leadsinger's sales representatives, customers or prospective
customers:  (1) injurious falsehood, (2) interference with
contract, and (3) interference with prospective advantage.  For
each of these three claims, plaintiff stated that they were only
being asserted "[w]ith respect to the customer, HH Gregg Appli-
ances and Electronics . . ." (Levine Aff. Ex. D).

Plaintiff's second amended complaint, however, raised
six claims for money damages:  (1) breach of contract (2d Am.
Compl. ¶¶ 1-10), (2) unjust enrichment (2d Am. Compl. ¶¶ 11-14),
(3) interference with contractual relationships and an additional
breach of contract claim (2d Am. Compl. ¶¶ 15-26), (4) interfer-
ence with prospective advantage (2d Am. Compl. ¶¶ 27-32), (5)

injurious falsehood (2d Am. Compl. ¶¶ 33-36), and (6) prima facie

tort (2d Am. Compl. ¶¶ 37-39).  Defendant contends that these

claims are inconsistent with plaintiff's earlier position that

limited its damage claims to HH Gregg only.

Plaintiff's breach of contract and unjust enrichment

claims, unlike the claims in plaintiff's first amended complaint,

arise from a dispute over commissions advanced to Cole but which

he allegedly never earned (see 2d Am. Compl. ¶¶ 1-14).[2]  The

subject matter of these two claims is wholly unrelated to plain-

tiff's position concerning its damage claims with respect to

Leadsinger's customers or prospective customers.  As such,

plaintiff's earlier position, limiting its damage claims in the

first amended complaint to HH Gregg only, has no preclusive

effect on plaintiff's separate and distinct claims for breach of

contract and unjust enrichment in the second amended complaint.

Turning to the balance of plaintiff's claims in the

second amended complaint -- tortious interference with contract,

an additional breach of contract claim, tortious interference

---

[2]I note that both of plaintiff's prior complaints filed in
state court alleged that "Cole has received advances exceeding
any commissions he may have earned" (Levine Aff. Exs. A, D both
at ¶ 5).  However, it was not until the second amended complaint
that plaintiff formally asserted its breach of contract and
unjust enrichment claims against Cole based on Cole's putative
obligation to return unearned commission payments (Levine Aff.
Ex. G).  As such, plaintiff has never taken an inconsistent
position with respect to Cole's alleged failure to repay unearned
commissions.

with prospective economic advantage, injurious falsehood and
prima facie tort -- like the claims raised in plaintiff's first
amended complaint, these claims seek damages based on Cole's
alleged violation of his contract's confidentiality provision
and/or his contacts with Leadsinger's sales representatives,
customers or prospective customers (see 2d Am. Compl. ¶¶ 15-39).
Although plaintiff previously represented to the state court that
it was limiting its damage claims to HH Gregg only, plaintiff is
now asserting the above-listed claims with respect to customers
beyond HH Gregg, e.g., Best Buy and Toys "R" Us.

Plaintiff concedes, as it must, that it represented to
Justice Smith that its damage claims were only being asserted
with respect to HH Gregg, while injunctive relief was being
sought for the balance of Leadsinger's customers.

> [A]s of April 26, 2005, damages were being sought
> only with respect to HH Gregg Appliance and that in-
> junctive relief was being sought as to the remaining
> major companies because to the best of Jerry Choe's
> knowledge at the time Ed Cole [had] not, as yet, sought
> to destroy plaintiff with respect to [the] other cus-
> tomers [listed in paragraph one of the first amended
> complaint]. That was the state of affairs as Jerry
> Choe remembered it on April 26, 2005.

(Siegert Aff. at ¶ 8 (emphasis in original and internal quotation
marks omitted)).

However, plaintiff also appears to be arguing that the
damage claims in the second amended complaint concerning custom-
ers other than HH Gregg accrued after April 26, 2005 (see Siegert

14

Aff. at ¶ 8).  In reply, defendant contends that the second

amended complaint "fails to allege any act which occurred, or

damage which accrued, <u>after</u> April 26, 2005" (Def.'s Reply Mem. at

2-3 (emphasis in original)).  However, Rule 8's liberal pleading

requirements do not require such detail; "there is no requirement

that [plaintiff] state the dates when the alleged conduct oc-

curred." <u>Graves v. MidHudson</u>, 04-CV-3957 (FB)(LB), 2005 WL

1377948 at *1 (E.D.N.Y. June 9, 2005); <u>accord</u> <u>Lee v. HealthFirst,</u>

<u>Inc.</u>, 04 Civ. 8787 (THK), 2006 WL 177175 at *7 (S.D.N.Y. Jan. 25,

2006) (noting that the "failure to provide relevant dates does

not render [a] complaint fatally defective"), <u>citing</u> <u>Aguilar v.</u>

<u>New York Convention Ctr. Operating Corp.</u>, 00 Civ. 4637 (CBM),

2002 WL 844397 at *2 (S.D.N.Y. May 2, 2002).

        Accordingly, plaintiff's current position in its second

amended complaint -- that damages are being sought for customers

beyond HH Gregg -- is inconsistent with plaintiff's earlier

position in state court only insofar as plaintiff attempts to

assert damage claims for customers other than HH Gregg prior to

April 26, 2005.  Plaintiff's earlier position did not waive any

future damage claims that might have accrued after April 26,

2005.  To the contrary, plaintiff's supplemental affidavit noted

that as of April 26, 2005, "defendant has not, as yet, sought to

destroy plaintiff with respect to [Leadsinger's other customers]"

(Levine Aff. Ex. C at ¶ 4).  Also, the first amended complaint

stated:  "While Cole will be liable for any damage sustained by Leadsinger as a result of his conduct, Leadsinger must prevent this misconduct for occurring and a preliminary injunction with a temporary retraining order is sought" (Levine Aff. Ex. D at ¶ 19).  In view of these statements, plaintiff left open the possibility of post-April 26, 2005 damage claims, if and when Cole's conduct damaged plaintiff with respect to other customers.

> 2.    Justice Smith Relied On Plaintiff's
>        Representations in Reconsidering the
>        <u>Application for an Order to Show Cause</u>

The second issue concerning defendant's assertion of judicial estoppel is whether Justice Smith granted plaintiff relief on the basis of the representations made in plaintiff's supplemental affidavit in support of an order to show cause and its first amended complaint.  <u>See</u> <u>Zedner v. United States</u>, <u>supra</u>, 126 S.Ct. at 1987; <u>New Hampshire v. Maine</u>, <u>supra</u>, 532 U.S. at 750-51; <u>Uzdavines v. Weeks Marine, Inc.</u>, <u>supra</u>, 418 F.3d at 148.

On April 26, 2005 Justice Smith denied plaintiff's first application for an order to show cause containing a temporary restraining order, stating:

> Decline to sign since plaintiff seeks monetary relief for the alleged wrong committed by defendant a TRO or preliminary and permanent injunctive relief [are] not appropriate.

(Levine Aff. Ex. B).

Following Justice Smith's denial, plaintiff filed its supplemental affidavit in support of an order to show cause and an amended verified complaint, in which, as explained above, it clarified that the damage claims were being asserted only with respect to HH Gregg, while injunctive relief was being sought for the balance of Leadsinger's customers (see Levine Aff. Exs. C-D; see also Siegert Aff. at ¶ 8). The day after plaintiff filed these papers, Justice Smith signed the order to show cause and entered a temporary restraining order against defendant (see Levine Aff. Ex. E).

Plaintiff argues that defendant, improperly, "attempts to read the mind of Justice Smith as to why she acted as she did" and, that "Justice Smith did not rely upon [plaintiff's] assertion that damages were only being alleged as against HH Gregg" (Siegert Aff. ¶ 9). Furthermore, plaintiff argues that "Justice Smith simply wanted to ensure that equitable relief was not being combined with money damages claims" (Siegert Aff. ¶ 9).

Plaintiff's own assertion that Justice Smith wanted to ensure that the application for equitable relief was not being combined with the claims for damages completely belies its argument and establishes reliance. As plaintiff concedes, Justice Smith first assumed, based on the initial complaint, that plaintiff wanted both equitable relief and money damages with respect to all of its customers. Therefore, Justice Smith denied

plaintiff's application (see Siegert Aff. at ¶¶ 4-7, 9).  Follow-
ing Justice Smith's denial, plaintiff expressly limited its
damage claims to HH Gregg so that it could obtain equitable
relief with respect to the balance of its customers.  The very
next day, plaintiff's application for a temporary restraining
order was granted.

Contrary to plaintiff's arguments, I find that based on
Justice Smith's reasons for declining to sign the initial order
to show cause, coupled with the close temporal proximity between
plaintiff's supplemental representations and Justice Smith's
revised order, the inference is inescapable that Justice Smith
relied on plaintiff's representations in reconsidering and,
ultimately, granting plaintiff's application for an order to show
cause containing a temporary restraining order.

### 3. Failure to Apply Judicial Estoppel Would Result in Unfairness

Finally, application of judicial estoppel is not proper
unless plaintiff would derive an unfair advantage or impose an
unfair detriment on defendant if not estopped.  See Zedner v.
United States, supra, 126 S.Ct. at 1987; New Hampshire v. Maine,
supra, 532 U.S. at 750-51.

Plaintiff here would not only unfairly benefit if it were able to enforce, by separate motion for contempt,[3] the temporary restraining order it procured by limiting the scope of its damage claims, plaintiff would also derive a potentially unfair advantage over defendant by now asserting a clearly inconsistent position in its second amended complaint in order to maximize its potential damages. If plaintiff is not estopped, defendant would have been found in contempt of an order premised on plaintiff's limiting its pre-April 26, 2005 damage claims to HH Gregg only, while now also being potentially liable for damage claims from customers other than HH Gregg. Such an unfair and inequitable result is precisely what the doctrine of judicial estoppel seeks to prevent. As a result, judicial estoppel is appropriate.

    4. <u>Summary</u>

Based on the foregoing, partial summary judgment is granted and plaintiff is judicially estopped from asserting any pre-April 26, 2005 claims for damages with respect to customers other than HH Gregg. However, summary judgment is denied insofar

---

[3]By notice of motion dated September 20, 2005 (<u>see</u> Docket Items 37, 43), plaintiff moved for, among other things, an Order holding defendant in civil contempt for violating Justice Smith's temporary restraining order. By Opinion and Order dated August 4, 2006, I found defendant in civil contempt of Justice Smith's Order (<u>see</u> Docket Item 53 at 45-47, 61-62).

as defendant attempts to preclude plaintiff's claims for damages to the extent that those claims seek damages accruing after April 26, 2005.

### C. Plaintiff's Putative Failure to State Claims Upon Which Relief Can be Granted

Next, defendant argues that all of the seven claims in the second amended complaint fail to state a claim upon which relief can be granted (Def.'s Mem. at 5-12). I shall address each of plaintiff's claims in turn.

#### 1. Breach of Contract

In order to state a breach of contract claim under New York law,[4] "a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996); accord Terwilliger v. Terwilliger, 206 F.3d 240, 245-46 (2d Cir. 2000); Dover Ltd. v. A.B. Watley, Inc., 423 F. Supp.2d 303, 329 (S.D.N.Y. 2006); Citadel Equity Fund Ltd. v. Aquila,

---

[4]The parties, by citing New York law only, implicitly agree that New York law governs the claims in plaintiff's second amended complaint. See Hannex Corp. v. GMI, Inc., 140 F.3d 194, 203 n.7 (2d Cir. 1998); Dorna USA, LLC v. Lighthouse Superscreens, Inc., 02 Civ. 8973 (RLC), 2004 WL 2721239 at *1 (S.D.N.Y. Nov. 29, 2004).

Inc., 371 F. Supp.2d 510, 516 (S.D.N.Y. 2005), aff'd without published opinion, 168 Fed. Appx. 474 (2d Cir. 2006).

Here, the second amended complaint contains the following relevant allegations: (1) "[o]n April 20, 2004, Leadsinger and Mr. Cole entered into a Sales Management Agreement (the 'Agreement') whereby Mr. Cole was appointed as the National Sales Manager of [Leadsinger] for a period of one year . . ."(2d Am. Compl. ¶ 5); (2) "Mr. Cole resigned from his position several days prior to [the Agreement's] expiration" (2d Am. Compl. ¶ 6); (3) "[i]n consideration for services rendered, pursuant to ¶ 3 of the Agreement, Mr. Cole was to receive commissions based upon a formula set out therein" (2d Am. Compl. ¶ 8); (4) "because of personal needs, Mr. Cole requested, and received, refundable advances against commissions in an amount of about $300,000 in excess of any commissions he may have earned" (2d Am. Compl. ¶ 8); (5) "Mr. Cole breached the Agreement by taking monies to which he was not entitled and failing to repay the same to Leadsinger" (2d Am. Compl. ¶ 9), and (6) "Leadsinger has been damaged in the sum of $300,000" (2d Am. Compl. ¶ 10).[5]

_____

[5]Although the Agreement is not attached to the second amended complaint, it is properly considered in connection with this motion because it is referenced throughout the complaint and the complaint "relies heavily upon its terms and effect," thereby rendering the Agreement "integral to the complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002); see also Int'l Audiotext Network, Inc. v. Am. Tel. and Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995); Cortec Indus., Inc. v. Sum Holding L.P.,
(continued...)

21

Defendant challenges only the first element of plaintiff's breach of contract claim -- the existence of an agreement. Defendant argues that because "[p]aragraph 3 states nothing about advances" but, rather, "discusses commissions Mr. Cole would receive," plaintiff has failed to state a viable breach of contract claim (Def.'s Reply Mem. at 4; see also Def.'s Mem. at 6-7). In response, plaintiff contends that "[it] has asserted the provision of the contract that was breached and that under the language thereof, $300,000 represented refundable advances because the money given to Mr. Cole was in excess of commissions he may have earned," citing, only, paragraph three of the Agreement (Plaintiff's Memorandum of Law in Opposition to the Motion of Defendant to Dismiss the Complaint, dated October 21, 2005 ("Pl.'s Mem.") at 1-2).

However, paragraph three of the Agreement, standing alone, cannot form the basis for plaintiff's breach of contract claim. Paragraph three of the Agreement does not set forth Cole's obligations with respect to repaying unearned advances on his commissions. Rather, paragraph three sets forth, inter alia, the limitations and restrictions on Cole's earning commissions and, by reference to Exhibit A annexed thereto, Cole's commission percentage. More notably, subsection (c) of paragraph three

_____

[5](...continued)
supra, 949 F.2d at 47-48. A copy of the executed Agreement is annexed to defendant's Notice of Removal (see Docket Item 1).

states, in pertinent part: "MANAGER shall not be entitled to any advance payments."[6]

Although it appears that paragraph three may be implicated in a claim alleging that Cole was paid more than he had earned in commissions -- i.e., in order to calculate the commission's Cole actually earned -- plaintiff's breach of contract claim cannot be premised, solely, on that paragraph's provisions. For example, paragraph three is not only silent on the parties' obligations concerning advances but, rather, expressly prohibits such advances. Indeed, subsection (d) of paragraph three provides for certain enumerated situations when Leadsinger has the "right to deduct or charge back against [Cole's] commission account." However, none of these situations mentions or applies to repayment of refundable advances.

Based on the provisions contained in paragraph three, it would appear that any purported agreement regarding unearned advances and repayment of the same may be governed by a separate agreement or by a modification to the existing agreement. As such, plaintiff's repeated reference to paragraph three does not provide the essential terms of the putative agreement that Cole

---

[6]I also note that "Exhibit A" to the Agreement provides: "ADVANCES: All monies received shall be considered loans in accordance with loan agreement dated September 2003, except $20,000 shall be considered commission on Circuit City sales from 4th Q[uarter] 2003." Plaintiff, however, does not reference either Exhibit A or the September 2003 loan agreement in the complaint as forming the basis for its breach of contract claim.

allegedly breached. See, e.g., VTech Holdings, Ltd. v. Pricewaterhouse Coopers, LLP, 348 F. Supp.2d 255, 263 (S.D.N.Y. 2004) ("[A] plaintiff must allege the essential terms of a contract in a claim for breach of contract . . . ."); Sobek v. Quattrochi, 03 Civ. 10219 (RWS), 2004 WL 2809989 at *3 (S.D.N.Y. Dec. 8, 2004) ("[C]omplaint must set forth the terms of the agreement upon which liability is predicated, either by express reference or by attaching a copy of the contract"); Ross v. FSG PrivatAir, Inc., 03 Civ. 7292 (NRB), 2004 WL 1837366 at *3 (Aug. 17, 2004 S.D.N.Y.) ("[W]hile a plaintiff is not required to attach a copy of the contract or to plead its terms verbatim, a complaint in a breach of contract action must nevertheless set forth the terms of the agreement upon which liability is predi- cated" (internal quotations omitted)); Highlands Ins. Co. v. PRG Brokerage, Inc., 01 Civ. 2272 (GBD), 2004 WL 35439 at *8 (S.D.N.Y. Jan. 6, 2004) ("A breach of contract claim will be dismissed, however, as being too vague and indefinite, where the plaintiff fails to allege, in nonconclusory fashion, the essen- tial terms of the parties purported contract, including the specific provisions of the contract upon which liability is predicated." (internal quotations omitted)).

Accordingly, I conclude that the allegations in the second amended complaint are insufficient to state a claim for

breach of contract premised on Cole's alleged failure to repay refundable advances on his commissions.

### 2. Unjust Enrichment

"'To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution.'" Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc., 448 F.3d 573, 586 (2d Cir. 2006), quoting Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000); accord Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V., 425 F. Supp.2d 458, 475 (S.D.N.Y. 2006); Beekman Invest. Partners, L.P. v. Alene Candles, Inc., 05 Civ. 8746 (DLC), 2006 WL 330323 at *8 (S.D.N.Y. Feb. 14, 2006).

Here, the second amended complaint contains the following relevant allegations: (1) "the [commission advances] Mr. Cole received belonged to plaintiff and were advanced in good faith to accommodate the personal needs of Mr. Cole with the expectation of repayment when sufficient commissions were earned" (2d Am. Compl. ¶ 12); (2) "Mr. Cole benefitted from the receipt of these advances" (2d Am. Compl. ¶ 13); (3) "Under principles of equity and good conscience, Mr. Cole should not be permitted to keep the advances" (2d Am. Compl. ¶ 14).

Defendant argues that plaintiff has not stated a viable claim because it:  (1) "neglects to allege how much commissions were subsequently earned or whether Mr. Cole in fact still owes Plaintiff any funds from the advance" and (2) "fails to allege that [it] in fact ever demanded the return of the advances" (Def.'s Mem. at 7; <u>see</u> <u>also</u> Def.'s Reply Mem. at 4).

Defendant, however, cites no authority in support of its arguments.  Nevertheless, my research does not reflect that plaintiff is required to allege that it made a demand in order to state a claim for unjust enrichment.  Furthermore, the amount of commissions that Cole actually earned or whether his alleged advances remain outstanding both appear to be "the sort of information that is appropriately the subject of discovery, rather than what is required to satisfy the limited pleading requirements of Rule 8(a)."  <u>Pelman ex rel. Pelman v. McDonald's Corp.</u>, 396 F.3d 508, 512 (2d Cir. 2005), <u>citing</u> <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 512-13 (2002).

Accordingly, I conclude that plaintiff's allegations are sufficient to state a claim for unjust enrichment under New York law.

3.  Tortious Interference with Contract

As the Court of Appeals for the Second Circuit explained in Kirch v. Liberty Media Corp., 449 F.3d 388, 401-02 (2d Cir. 2006):

> Under New York law, the elements of tortious interference with contract are (1) "the existence of a valid contract between the plaintiff and a third party"; (2) the "defendant's knowledge of the contract"; (3) the "defendant's intentional procurement of the third-party's breach of the contract without justification"; (4) "actual breach of the contract"; and (5) "damages resulting therefrom." Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 424, 668 N.E.2d 1370, 1375, 646 N.Y.S.2d 76, 82 (1996).

See also Slue v. New York Univ. Med. Ctr., 409 F. Supp.2d 349, 372 (S.D.N.Y. 2006) (same), citing Bradbury v. Cope-Schwarz, 20 A.D.3d 657, 798 N.Y.S.2d 207, 209 (3d Dep't 2005); Brady v. Calyon Sec. (USA), 406 F. Supp.2d 307, 314 (S.D.N.Y. 2005) (same).

Defendant attacks each element of plaintiff's tortious interference with contract claim (see Def.'s Mem. at 7-10; see also Def.'s Reply Mem. at 4-5).  However, I need not address each element since plaintiff's allegations fail to satisfy both the first -- "the existence of a valid contract between the plaintiff and a third party," and the fourth -- "actual breach of the contract."  Kirch v. Liberty Media Corp., supra, 449 F.3d at 401.

Although plaintiff alleges that "Mr. Cole was aware of contracts between Leadsinger and sales representatives and third

parties, including, but not limited to, HH Gregg and Best Buy"
(2d Am. Compl. at ¶ 23), and that "[b]ecause of Mr. Cole's acts,
HH Gregg, Best Buy and others were induced to breach their
contracts with Leadsinger" (2d Am. Compl. at ¶ 25), plaintiff has
failed to allege the relevant terms of the contracts that existed
between Leadsinger and HH Gregg or Best Buy at the time of Cole's
purported acts and, moreover, how HH Gregg or Best Buy breached
the terms of their contracts with Leadsinger. See Kirch v.
Liberty Media Corp., supra, 449 F.3d at 402 (affirming the
dismissal of a tortious interference with contract claim because
plaintiff failed to allege how the third-party actually violated
the terms of its contract with plaintiff); see also Millar v.
Ojima, 354 F.Supp.2d 220, 230 (E.D.N.Y. 2005) ("In order to state
a [tortious interference with contract] claim, the plaintiff is
required to identify a specific contractual term that was
breached." (internal quotation marks omitted)); G-I Holdings,
Inc. v. Baron & Budd, 179 F. Supp.2d 233, 253 (S.D.N.Y. 2001)
(dismissing a tortious interference with contract claim for both
the failure to allege "a valid, existing contract or any terms of
contract with a third party," as well as how the third-party
breached its contract with the plaintiff). Accord RMS Int'l
Shipping GmbH v. Stemcor USA, Inc., 90 Civ. 4918 (LMM), 1991 WL
136035 at *4 (S.D.N.Y. July 18, 1991 (dismissing a tortious
interference with contract because of the failure "to satisfy the

requirement that plaintiff plead specifically whether and how the [third-party] contract was breached"), <u>citing</u> <u>Nordic Bank PLC v. The Trend Group, Ltd.</u>, 619 F.Supp. 542, 561 (S.D.N.Y. 1985).

Accordingly, I find that the allegations in the second amended complaint are insufficient to state a claim for tortious interference with contract.[7]

### 4.   Tortious Interference with Prospective Economic Advantage

In order to state a claim for tortious interference with prospective economic advantage claim under New York law, a plaintiff must allege:  "(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relation-ship." <u>Kirch v. Liberty Media Corp.</u>, <u>supra</u>, 449 F.3d at 401, <u>citing</u> <u>Carvel Corp. v. Noonan</u>, 350 F.3d 6, 17 (2d Cir. 2003); <u>see also</u> <u>Lombard v. Booz-Allen & Hamilton, Inc.</u>, 280 F.3d 209, 214

---

[7]Plaintiff's tortious interference with contract claim also contains what plaintiff has labeled as "A Further Breach of Contract" claim.  Here, plaintiff's alleges that Cole also breached the confidentiality provision, contained in paragraph seven of the Agreement, by disclosing confidential information to third-parties.  Defendant has not challenged plaintiff's allegations with respect to this additional breach of contract claim and, therefore, I need not address this claim's sufficiency.

(2d Cir. 2002); <u>Goldhirsh Group, Inc. v. Alpert</u>, 107 F.3d 105, 108-09 (2d Cir. 1997).

Defendant claims that plaintiff has failed to allege: the terms of the relationship, that Cole had knowledge of those terms, how Cole interfered, that Cole made false statements,[8] what actions the third-parties took based on Cole's communications, or how plaintiff was harmed (<u>see</u> Def.'s Mem. at 10-11; <u>see also</u> Def.'s Reply Mem. at 4-5). Defendant appears to making arguments parallel to those raised in connection with the prior tortious interference with contract claim. However, in the context of a tortious interference with prospective economic advantage claim, plaintiff is not required at the pleading stage "to identify with sufficient specificity the prospective contractual relationships in question. . . . It would be unreasonable to require more specific pleadings prior to discovery." <u>Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC</u>, 317 F. Supp.2d 301, 335 (S.D.N.Y. 2003). Moreover, defendant's parallel arguments are misguided for the additional reason that the elements of the two

_____

[8]Defendant also argues that the statements he made in the e-mail quoted in the complaint -- concerning alleged flaws in Leadsinger's products -- are true and that plaintiff has conceded the truth of these statements in a subsequently allegation (<u>see</u> 2d Am. Compl. ¶¶ 17-18). This aspect of defendant's argument goes to the merits of plaintiff's claims and, therefore, is not properly considered on a motion to dismiss for failure to state a claim. Rather, under the present procedural posture, not only must I accept as true all factual allegations in the second amended complaint, but I also must draw all reasonable inferences from these allegations in the light most favorable to the plaintiff. <u>See</u> <u>Conley v. Gibson</u>, <u>supra</u>, 355 U.S. at 45-46.

torts are different.  See <u>Linens of Europe, Inc. v. Best Mfg.,</u>
<u>Inc.</u>, 03 Civ. 9612 (GEL), 2004 WL 2071689 at 20 (S.D.N.Y. Sept.
16, 2004) ("[W]hile the allegations, liberally construed, suffice
to state a claim for tortious interference with prospective
economic advantage, they do not state a claim for tortious
interference with contract."); <u>G-I Holdings, Inc. v. Baron &</u>
<u>Budd</u>, 238 F. Supp.2d 521, 536 (S.D.N.Y. 2002) (noting that in the
absence of sufficient allegations for a tortious interference
with contract claim, "the alternative claim for tortious inter-
ference with economic advantage would be viable").

Here, plaintiff alleges that:  (1) Leadsinger had a
business relationship with customers, such as Toys "R" Us, where
it had either a prospective contract or intended to enter into a
contract and "Leadsinger had a reasonably expected economic
advantage" based on these relationships (2d Am. Compl. ¶¶ 29-31);
(2) Cole had "knowledge of all of Leadsinger's contracts and
prospective contracts with customers" (2d Am. Compl. ¶¶ 29-30);
(3) Cole sent e-mails "attempting to create doubt about the
quality of Leadsinger's products to thereby interfere with sales"
and Cole's "statements about Leadsinger's product are false or
otherwise designed to impart false information and are made
maliciously" (2d Am. Compl. ¶¶ 17-18, 28-29), and (4) "[b]ecause
of Mr. Cole's unlawful actions, contracts would have resulted but
for his interference" and Cole's statements "will induce, and has

induced, customers to break contracts with Leadsinger or has otherwise induced customers not to enter into contracts thereby resulting in significant damages" (2d Am. Compl. ¶¶ 29, 32). These allegations sufficiently state a claim for tortious interference with prospective economic advantage. See, e.g., Tasso v. Platinum Guild Int'l, 94 Civ. 8288 (LAP), 1997 WL 16066 at *4-*5 (S.D.N.Y. Jan. 16, 1997) (denying a motion to dismiss a tortious interference with prospective economic advantage claim where plaintiff alleged that defendant made defamatory statements that induced a third-party not to become plaintiff's client).

Accordingly, defendant's motion to dismiss plaintiff's claim for tortious interference with prospective economic advantage is denied.

### 5.  Injurious Falsehood

As the Honorable Gabriel W. Gorenstein, United States Magistrate Judge, explained in E-Z Bowz, L.L.C. v. Prof'l Prod. Research Co., Inc., 00 Civ. 8670 (LTS)(GWG), 2003 WL 22068573 at *35 (S.D.N.Y. Sept. 5, 2003) (Report & Recommendation), adopted by, 2005 WL 535065 at *21 (S.D.N.Y. Mar 8, 2005):

> "The tort of trade libel or injurious falsehood consists of the knowing publication of false matter derogatory to the plaintiff's business of a kind calculated to prevent others from dealing with the business or otherwise interfering with its relations with others, to its detriment." Waste Distillation [Tech., Inc. v. Blasland & Bouck Eng'rs, P.C., 136 A.D.2d 633, 634, 523 N.Y.S.2d 875, 877 (2d Dep't 1988)].

Accord <u>Zdenek Marek v. Old Navy (Apparel) Inc.</u>, 348 F. Supp.2d 275, 281 (S.D.N.Y. 2004); <u>Kasada, Inc. v. Access Capital, Inc.</u>, 01 Civ. 8893 (GBD), 2004 WL 2903776 at *15 (S.D.N.Y. Dec. 14, 2004); <u>P. Kaufmann, Inc. v. Americraft Fabrics, Inc.</u>, 198 F. Supp.2d 466, 471 (S.D.N.Y. 2002).

Here, defendant argues that "plaintiff utterly fails to allege what Mr. Cole said, much less that it was false" (<u>see</u> Def.'s Mem. at 11; <u>see</u> <u>also</u> Def.'s Reply Mem. at 5).

It appears, however, that defendant has failed to read plaintiff's injurious falsehood claim in its entirety. Although the injurious falsehood section of the complaint does not set forth Cole's putatively false statements <u>ver</u> <u>batim</u>, all of the allegations made in the prior paragraphs have been reasserted in plaintiff's injurious falsehood claim. Paragraph 17 of the complaint quotes an excerpt from an e-mail that Cole purportedly published concerning "certain flaws" in one of Leadsinger's products (2d Am. Compl. ¶ 17). Plaintiff has also alleged throughout the complaint that Cole's statements with respect to this product are false (<u>see</u> 2d Am. Compl. ¶¶ 17-18, 28-29, 34-35; <u>see</u> <u>also</u> footnote 6).

In light of these allegations, defendant's arguments have no merit. Therefore, I conclude that plaintiff has sufficiently stated an injurious falsehood claim.

6. <u>Prima Facie Tort</u>

"To state a claim for prima facie tort under New York state law, a plaintiff must show '(1) the intentional infliction of harm, (2) which results in special damages, (3) without any excuse or justification, (4) by an act or series of acts which would otherwise be lawful[.]'" Langhorne v. Port Auth. of N. Y. & N.J., 03 Civ. 4610 (RMB), 2006 WL 148936 at *2 (S.D.N.Y. Jan. 18, 2006), quoting Freihofer v. Hearst Corp., 65 N.Y.2d 135, 142-43, 480 N.E.2d 349, 355, 490 N.Y.S.2d 735, 741 (1985); see also Bear, Stearns Funding, Inc. v. Interface Group-Nevada, Inc., 361 F. Supp.2d 283, 306 (S.D.N.Y. 2005) (same); Discover Group, Inc. v. Lexmark Int'l, Inc., 333 F. Supp.2d 78, 87 (E.D.N.Y. 2004) (same).  Furthermore, "[i]n order to state a cause of action for prima facie tort, special damages must be alleged with sufficient particularity to identify actual losses and round sums without any attempt at itemization are insufficient." Discover Group, Inc. v. Lexmark Int'l, Inc., supra, 333 F. Supp.2d at 87 (internal quotation marks omitted); see also Bear, Stearns Funding, Inc. v. Interface Group-Nevada, Inc., supra, 361 F. Supp.2d at 306 ("The second element above requires that the alleged victim of a prima facie tort aver with specificity the amount of damages causally related to the tortious act."); T.S. Haulers, Inc. v. Town of Riverhead, 190 F. Supp.2d 455, 466 (E.D.N.Y. 2002) ("[P]laintiff fails to allege special damages

with any particularity;" rather, an "itemization is required to state a claim for prima facie tort").

Plaintiff here has failed to allege with sufficient particularity its actual losses with respect to its prima facie tort claim. Plaintiff's round sum of "no less than $500,000" (2d Am. Compl. ¶ 26), without any attempt at itemization, is insufficient based on the above authority.

Accordingly, I find that the allegations in the second amended complaint are insufficient to state a claim for prima facie tort.

### 7. Permanent Injunction

Lastly, defendant moves to dismiss plaintiff's final "claim" for a permanent injunction, arguing that an injunction is a form of relief rather than a claim (see Def.'s Mem. at 12; see also Def.'s Reply Mem. at 6).

In support of dismissal, defendant cites NAS Elec., Inc. v. Transtech Elec. PTE Ltd., 262 F. Supp.2d 134, 149 (S.D.N.Y. 2003), where the Honorable John G. Koeltl, United States District Judge, held:

> The defendants have also moved to dismiss the plain-
> tiffs' claim for a preliminary injunction. As the
> defendants correctly point out, a preliminary injunc-
> tion is a form or relief, and not a claim or a cause of
> action, and because there is no claim present that
> would justify the granting of a preliminary injunction,
> the plaintiffs asserted fifth cause of action for such
> relief must be dismissed. Moreover, the plaintiffs

> raised the issue of a preliminary injunction originally
> as an attempt to prevent the sale of property owned by
> Jerry Choe, and because Justice Kapnick denied the
> request to stay such a sale and because the sale actu-
> ally took place, the question of whether the plaintiffs
> are entitled to a preliminary injunction is now moot.
> Finally, the plaintiffs have abandoned their claim for
> a preliminary injunction by failing to respond to the
> defendants' arguments.  For these reasons, the plain-
> tiffs' claim for a preliminary injunction is dismissed.

See also Reuben H. Donnelley Corp. v. Mark I Mkt. Corp., 893 F. Supp. 285, 293 (S.D.N.Y. 1995) ("There is no 'injunctive' cause of action under New York or federal law.").

Here, as in NAS, plaintiff has not responded to defendant's arguments.  Furthermore, by notice of motion dated September 20, 2005, plaintiff moved for a preliminary injunction and temporary restraining order seeking to enjoin defendant from, i.e., contacting Leadsinger's customers, potential customers, sales representatives, management and the family of Jerry Choe. I held a hearing on September 23, 2005 and, for the reasons stated on the record in open court, entered an order on September 26, 2005 that, inter alia, denied plaintiff's application for a preliminary injunction (see Docket Item 26).

In view of my prior ruling and plaintiff's failure to respond to defendant's arguments, coupled with the absence of any additional facts, aside from those raised during the preliminary injunction hearing, that would support plaintiff's application for an injunction, I conclude that plaintiff has failed to allege a claim upon which injunctive relief may be granted.  See, e.g.,

<u>Reuben H. Donnelley Corp. v. Mark I Mkt. Corp.</u>, <u>supra</u>, 893 F.
Supp. at 293 ("[Plaintiff's] fail[s] to establish that [it] will
suffer irreparable harm by demonstrating the inadequacy of money
damages.  On the other hand, clearly money damages would fully
compensate [plaintiff] for [defendant's] past failures . . .
Absent a demonstration that these damages are inadequate, injunc-
tive relief is inappropriate in this breach of contract ac-
tion.").

IV.  <u>Conclusion</u>

        With respect to defendant's motion for summary
judgement, partial summary judgment is granted and plaintiff is
judicially estopped from asserting any pre-April 26, 2005 damage
claims with respect to customers other than HH Gregg.  However,
summary judgment is denied insofar as defendant attempts to
preclude plaintiff from seeking damages with respect to any
customers that accrued after April 26, 2005.

        As for defendant's motion to dismiss for failure to
state claim, the motion is granted with respect to plaintiff's
claims for:  (1) breach of contract (Count One), (2) tortious
interference with contract (Count Three), (3) <u>prima</u> <u>facie</u> tort
(Count Six) and (4) injunctive relief (Count Seven).  Since
plaintiff may be able to remedy the defects in these claims,
defendant's motion is granted without prejudice and with leave to

defendant's motion is granted without prejudice and with leave to replead. See Cortec Indus., Inc. v. Sum Holding L.P., supra, 949 F.2d at 48 (leave to replead should be freely given). Therefore, if plaintiff chooses to file an amended complaint, it has twenty (20) days from the date of this Order to do so.

Finally, defendant's motion to dismiss is denied with respect to plaintiff's claims for: (1) unjust enrichment (Count Two), (2) the additional breach of contract claim (also contained within Count Three), (3) tortious interference with prospective economic advantage (Count Four), and (4) injurious falsehood (Count Five).

Dated: New York, New York
       August 10, 2006


                              SO ORDERED


                              _____
                              HENRY PITMAN
                              United States Magistrate Judge


Copies transmitted to:

Mr. Edward J. Cole
13612 Marshall Lane
Tustin, CA 92780

Paul W. Siegert, Esq.
49 West 33rd Street
New York, New York  10001